## WALTON v. FIRST NAT. BANK.

|  |  |
|---|---|
| 13 | 265 |
| 13 | 257 |

1. SECRET SECURITY — FRAUD ON OTHER CREDITORS.— It is a fraud on other creditors for a debtor in failing circumstances to sign a confession of judgment in favor of a certain creditor, on the latter's agreement to withhold it from record and from the public until it should become necessary to use the same to protect his own claims.

2. A LEGAL PREFERENCE MAY BE GIVEN TO ONE CREDITOR, BUT SECRET SECURITY A BADGE OF FRAUD.— In the absence of statutory restrictions. a debtor may lawfully prefer one creditor, and a confession of judgment for a lawful debt under such circumstances is not of itself fraudulent; but when there is a failure to enter the judgment of record for the purpose of giving the debtor a fictitious financial standing, and to enable him to perpetrate fraud by obtaining credit, the whole transaction may, at the suit of other creditors, be set aside as constructive fraud.

3. SAME — REPRESENTATIONS OF DEBTOR ADMISSIBLE AGAINST CREDITOR.— The written confession of judgment having been kept secret by the parties thereto, lest the debtor's credit might be injured, any representations thereafter made by the debtor to obtain credit from others are admissible in an action against the judgment creditor to set aside the judgment for fraud, under the rule that representations made by one are binding on others with whom he is in collusion.

*Appeal from District Court of San Juan County.*

BY the complaint in this cause it is alleged that plaintiff, on March 25, 1884, was a creditor of H. P. Walton in the sum of $4,040, evidenced by a promissory note dated December 1, 1883. That on March 25, 1884, judgment was obtained and execution issued, and levy made upon certain chattel property. That a long time prior to March 25, 1884, H. P. Walton was insolvent. That on said day, apprehending that appellee would sue and attach his property, he, with intent to cheat, hinder, delay and defraud his creditors, confessed a judgment of the sum of $8,182.50 in favor of E. T. Walton, his brother, and thereby gave undue preference to him; and E. T. Walton sued out an execution on said day, and levied on the same property levied upon by the plaintiff, but prior to the levy of plaintiff's execution. That H. P. Walton had no other property subject to execution. That this judgment so confessed is fraudulent and void as to plaintiff and other *bona fide* creditors, because H. P. Walton, on June 1, 1883, was insolvent, and that E. T. Walton knew that fact. That on June 1, 1883, an agreement was made between H. P. Walton and E. T. Walton to the effect that H. P. Walton would protect E. T. Walton at all hazards; and for the purpose of carrying out this agreement it was to be kept secret from all parties except the attorney, E. T. Walton. H. P. Walton, on June 19, 1883, gave a confession of judgment in favor of E. T. Walton for the sum of $11,180, covering moneys advanced and notes indorsed by E. T. Walton. This confession of judgment, it was agreed between them, should be kept secret, and should not be filed in court. That it was to be held and acted upon in case an emergency should arise. That the purpose of this was to give H. P. Walton a false and fictitious credit and commercial standing which he was not entitled to, and could not have obtained if these facts had been known. That afterwards the confession of judgment on June 19,

1883, became inoperative by reason of further advances made by E. T. Walton, and in order to carry out the agreement of June 1, 1883, the confession of judgment of March 25, 1884, was executed. That, when H. P. Walton obtained the loan from the bank, he represented that his indebtedness to E. T. Walton was a book-account, and for the sum of $6,000, and that E. T. Walton had no security for it, and under no circumstances would press him or enforce the collection. That, relying upon these representations, the loan was made. Prays that the proceeds of the sale of the chattels levied upon be subject to the execution of appellee.

The averments of the complaint are specifically denied by E. T. Walton. The cause was tried to the court.

By the deposition of E. T. Walton it appears that he obtained the judgment of March 25, 1884; that in June, 1883, his brother was indebted to him for moneys advanced and paper indorsed, which aggregated the sum of $11,180; and that his brother had agreed to secure him at all hazards for these loans and indorsements, but no time was fixed when this indebtedness should become due. He says: "I wrote to him to see N. E. Slaymaker, and have him act as counsel, and see that I was secured. I suggested a judgment bond, but he objected to having a bond entered of record, saying that a judgment, or anything so public, would affect his credit. So I agreed to hold it until such time as it would be necessary to enter it to protect my interests. This I agreed to with the distinct understanding with Howard that he was to keep Mr. Slaymaker advised of the condition of his business affairs in order that I might be protected. June 19, 1883, I received a letter from Mr. Slaymaker advising me that he had obtained a confession of judgment. I approved of his action, and frequently advised my brother to keep him fully advised of the condition of his affairs in my behalf. I afterwards let Howard have $1,500, and as the additional loan rendered the confession of judgment which I had inaccurate as to amount, I let him have it

with the distinct understanding that he should keep Mr. Slaymaker advised of his affairs in order that he might institute proceedings, or take such steps for securing the protection of my interests as might be required. It was in pursuance of this understanding that my brother gave the confession of judgment of March 25, 1884. I repeatedly urged him to keep the matter before Mr. Slaymaker, so that I might have a judgment confessed whenever it was necessary for my protection."

J. H. Werkheiser testified that he is cashier of the First National Bank of Silverton, and that he had a conversation with Howard P. Walton about December 1, 1883, when he renewed and made the note of $4,000, and that Howard stated that his brother, E. T. Walton, would not press him for the $6,000 that he owed him, and had agreed or promised to let him pay the $6,000 out of his business, as he could pay it; that it was simply a book-account, and that his brother had no security or evidence of security; that on these terms he renewed the note.

The court found that the judgment of March 25, 1884, in favor of E. T. Walton, was obtained under the following circumstances: On the 1st day of June, 1883, the defendant H. P. Walton then being insolvent, which fact the defendant E. T. Walton well knew, entered into an agreement between them, to the effect that H. P. Walton should protect the said E. T. Walton at all hazards for certain advances which he had previously made to H. P. Walton, and that, pursuant to this agreement, a confession of judgment in favor of E. T. Walton for the sum of $11,180 was prepared, which confession of judgment was executed and delivered to E. T. Walton, and that it was distinctly agreed between them that it should not be filed with the clerk of the court until it should become necessary to do so for the purpose of protecting E. T. Walton; that the same should be kept secret; that no judgment should be entered upon it; and that this agreement was for the express purpose of sustaining the credit of H. P. Walton, and to enable him to obtain a credit to

which he was not entitled, and which he could not have obtained if these facts had not been so suppressed; that this judgment was a renewal of a confession of judgment of June 19, 1883, and that the last-mentioned judgment was made in pursuance of the original contract, by the terms of which E. T. Walton was to be protected at all hazards.

That on the 1st day of December, 1883, Howard P. Walton, for the purpose of obtaining credit from the plaintiff, falsely and fraudulently represented to the agent of the plaintiff that the indebtedness due his brother was $6,000; that it was due upon book-accounts, and that E. T. Walton had no security therefor, and would not press for the payment of the same, or enforce the collection thereof; that the representation was believed by the agent to be true, and thereby Howard P. Walton obtained from the plaintiff credit, evidenced by the note sued on.

There were no objections to the other findings of the court, and therefore it is not necessary to recite them. Upon the findings it was ordered, adjudged and decreed that the judgment of date March 25, 1884, in favor of E. T. Walton, for the sum of $8,182.50, and upon which execution was issued, be, and the same is, declared void as against plaintiff; that the property seized and taken upon said execution, and that all of the proceeds thereof now in the hands of the sheriff, shall be first subjected to the execution issued upon the judgment in the action of the plaintiff against the defendant Howard P. Walton, rendered and entered on the 25th day of March, 1884, save and except $35 of costs; to which said judgment and decision of the court the defendant E. T. Walton then and there excepted.

Messrs. HUDSON & SLAYMAKER, for appellants.

Mr. CHAS. E. GAST, for appellee.

RICHMOND, C.    Assignments of error are to the admitting of evidence, over the objections of defendant, of John

H. Werkheiser, to conversations had by him with defendant Howard P. Walton, to the effect that the indebtedness due his brother was only $6,000 on book-account, for which his brother held no security, and would not press him, and that the judgment of the court is at variance with the evidence in the case and contrary to law.

The basis of the objections to the testimony of Werkheiser is that there was no privity existing between Howard P. Walton and E. T. Walton, as agent, personally or otherwise.

By the complaint and answer the representations of Howard P. Walton were directly put in issue. In the complaint it is averred that he stated that E. T. Walton's claim against him amounted to $6,000, but that he had no security for the same, and would not press it. E. T. Walton, in his answer, denies that the plaintiff was misled or deceived by any act or word of his, or of said Howard P. Walton, with respect to the said confession of judgment. This, it appears, makes an issue as to what representations were made by Howard P. Walton concerning the then existing security, to wit, the confession of judgment of June 19, 1883. It appears that the relations existing between Howard P. Walton and E. T. Walton were not only that of debtor and creditor, but Howard P. Walton was intrusted by his brother to represent him, so far as the indebtedness was concerned, and his future actions relative to the security which it was agreed should be given. He was left the sole judge of the necessities that might arise between his brother and his other creditors, and, if he personally believed himself able to stem the current of financial disaster, this confession of judgment was not to be made public by being placed upon the record. Indeed, he was the sole judge of the time when the confession of judgment should be filed and execution issued. E. T. Walton admits that he agreed with his brother to hold the confession of judgment until such time as it would be necessary to enter it to protect his interests. Howard P. Walton was to keep

the attorney advised, from time to time, as to the condition of his affairs. The attorney had no authority or instructions to investigate, but any insight he obtained of the business condition of Howard P. Walton was through his voluntary admissions or statements; and I am inclined to think that, so far as the question of securing the indebtedness from Howard P. Walton to E. T. Walton is concerned, E. T. Walton made his brother, Howard P. Walton, his representative to that extent, and for the purpose of carrying out the agreement of June 1, 1883. He had made and executed a confession of judgment, passed it to the attorney, who had instructions to keep the same from the public, and only use it in case of absolute emergency. Therefore, by the specific denial above referred to, and the circumstances as they appear in the testimony, I am clearly of the opinion that the evidence of Werkheiser was admissible as tending to establish the collusion in the fraud averred by the plaintiff, to wit, the undue preference, the secrecy of the security, and the fraudulent prejudice of other creditors.

It is said by Mr. Justice Washington, in delivering the opinion of the court in *Fur Co. v. United States*, 2 Pet. 365, that, "where two or more persons are associated together for the same illegal purpose, any act or declaration of one of the parties, in reference to the common object, and forming a part of the *res gestæ*, may be given in evidence against the others."

The effect of the arrangement between the Waltons was to place Howard P. Walton in such a condition that he could obtain credit and standing with other individuals, and that E. T. Walton could at any time, by filing his confession of judgment, protect himself to the prejudice of those who by his own conduct had been induced to give credit to his brother Howard. In other words, he was in a position at any moment, when other creditors were pressing for payment of their claims, to absorb the entire assets and thus deprive other creditors of

any part whereby they could obtain satisfaction of any judgment they might secure.   Should his brother's affairs turn so as to necessitate prompt action, he would be in a position to enforce his securities for all moneys advanced, and for which he had become liable.   The effect of the combination was that no other creditor, however diligent he might be, however honest or old his claim might be, could have access to any of the property of Howard P. Walton, to the detriment of E. T. Walton, and, the evidence showing the existence of the confession of judgment, the agreement to keep it from the public was, in my opinion, sufficient to establish a confederation between the two which would admit the acts and declarations of one against the other.   *Cuyler v. McCartney*, 40 N. Y. 221.

Now, as to the findings of the court in regard to the alleged insolvency of Howard P. Walton.   By insolvency is meant an inability to fulfill one's obligations according to his undertaking, and general inability to answer in court for all of one's liabilities existing and capable of being enforced; not an absolute inability to pay at some future time, upon a settlement and ending up of a trade, but as not being in condition to pay one's debts in the ordinary course, as persons carrying on trade usually do. If, upon taking a reasonable view of the situation, as appears from the evidence in this case, it could fairly be seen that Howard P. Walton was able, not only to ultimately pay his debts, but to at once recover from the temporary embarrassments and arrangements of his business by a proper application of his means, and could carry on his business and meet his engagements in the ordinary course, and as persons in the same business usually do, he would properly be called solvent.   But the testimony does not warrant this conclusion.   If his inability to pay had been the result of a crisis or peculiar stringency in the monetary affairs of the country, by which he was cut off temporarily from resources upon

which he was accustomed to rely, and upon which traders in like circumstances were accustomed to rely, the effect would be the same on the general question of insolvency. It is extremely difficult, if not impracticable, to give a definition of insolvency that shall be found applicable to all classes of persons. It is not, indeed, the business of practical jurisprudence to give definitions or lay down abstract propositions, but to give the rule applicable to the facts proved, even if the abstract rule for the class be the same. The kind and degree of evidence to establish insolvency would be very different in the case of a merchant from that requisite in the case of a farmer. The evidence which would satisfy a jury or a court of the insolvency of the former might wholly fail to convince them of that of the latter. It was necessary, in this particular case, for the court to determine the question of insolvency, and from the evidence the court concluded that he was insolvent at the time referred to; and I am of the opinion that this finding of the court should not be disturbed, according to the rule laid down in *Dickson v. Moffat*, 5 Colo. 117.

The statements of E. T. Walton in his deposition warranted the conclusion that the confession of judgment of March 25, 1884, was a renewal of the confession of judgment of June 19, 1883. This is what he says: "I afterwards loaned Howard P. Walton an additional sum of $1,500, and, as this additional loan rendered the confession of judgment which I had inaccurate as to amount, I let him have it with the distinct understanding that he should keep Slaymaker advised of his affairs, so that such steps for securing the protection of my interests should be taken as might be required."

The main point, however, in this case is, was the judgment of March 25, 1884, void as to creditors? It is argued by appellee, and undoubtedly it was the conclusion of the court, that this confession of judgment was but the continuation of the agreement made in June,

1883, to wit, that the moneys advanced by E. T. Walton should be ultimately embraced in a confession of judgment, and that the judgment should not be used or made public unless the situation, financially, of Howard P. Walton became such as to necessitate prompt and decisive action; in effect, that E. T. Walton should get control by the first execution of the assets of Howard P. Walton, and but for the additional loan, or, we might say, the inaccuracy of the amount, the first confession of judgment would never have been changed, the second never given. If the case had been tried to a jury, and the court had distinctly instructed the jury of the necessity of finding that this judgment was a part of the original transaction and agreement, and the jury had so found from the evidence, I would be loath to disturb the verdict; and as this court has determined that a trial by the court upon oral testimony before the judge is controlled by the same principles as a trial by jury, and that they will not disturb the verdict unless manifestly against the weight of the evidence, the findings of the court should not be disturbed in this case. The findings being correct, the judgment was justified. The theory, undoubtedly, of the court below was, and I think it correct, that this entire transaction between E. T. Walton and Howard P. Walton came within the lines of constructive fraud; that is, it was such an act or contract as, although not originating in any actual design or connivance to perpetrate a positive fraud or injury upon other persons, yet, by its tendency to deceive or mislead persons, it was equally reprehensible with positive fraud, and therefore prohibited by law, as being equivalent to acts or contracts done *malo animo.*

It is an undoubted fact that had the bank, through its agent, been advised, or in a position to learn, that Howard P. Walton had given a confession of judgment to his brother, to be used when circumstances, in the opinion of himself or the attorney, were such as to necessitate

prompt action for his protection, the bank would not have extended the loan evidenced by the note sued on, but, on the contrary, good business sense would have suggested the propriety of at once securing the existing indebtedness to the bank; and, had it done so, it would then have been confronted by the confession of judgment of June 19, 1883, in the hands of the attorney, ready to be filed at the first warning. The evidence certainly justifies the conclusion that by means of the suppression, or, rather, by means of the secrecy concerning the security, the facts that it was known only to three individuals, was not known to the bank, nor could it be learned by inquiry, enabled Howard P. Walton to obtain a credit and standing to which he was not entitled.

Counsel for appellant rely on the case of *Smith v. Craft*, 17 Fed. Rep. 705. In that case there was an oral promise by a party borrowing from a bank "that he would protect the bank if anything ever occurred by which he was not able to pay his debts; that, if he met with losses, he would secure the bank if the bank would loan him money from time to time." There was no security given at the time he obtained the loan, or promise to keep the same secret; and, as the court remarked, "such promise, especially when made in the general terms employed in this instance, has no legal force." Besides, at the time the credit was given, it appears that "the debtor was doing an apparently prosperous business, though largely on credit, and advances were made to him without a belief, or imperative reason for the belief, that he was, or was likely to become, insolvent." But in that case the court was careful to say: "I do not doubt that a promise to secure or to prefer a creditor, made at the time the credit is given, may be fraudulent, but it must be when a fraud is intended, or when the circumstances within the knowledge of the creditor are such that he must know that injury to others will probably result."

It will readily be observed how widely different were the circumstances in the case of *Smith v. Craft* from those presented by this appeal. The circumstances of this case, as they appear in evidence under the pleadings, justify the belief that this agreement to prefer was with the distinct knowledge that Howard P. Walton's circumstances were such as ultimately would necessitate action upon the confession of judgment. He went into business on borrowed capital furnished by his brother, and from first to last was continually appealing to his brother for indorsements or assistance. He even solicited his brother's indorsement of the note given to the bank for $4,000. The solicitude manifest from E. T. Walton's deposition and letters; his continued appeals to his brother that he should protect him; that he should have the first opportunity of proceeding against the assets, and no positive time of payment agreed upon,—is conclusive to the mind that he was personally familiar with the insolvent condition of his brother and knew of his indebtedness to other parties.

It is not to be understood from this opinion that, in the absence of statutory restriction, a debtor may not, under ordinary circumstances, lawfully give preference to one creditor over others; nor that it is a badge of fraud for a creditor to secure such preference. The transaction between the Waltons in this case is deemed fraudulent, not merely on the ground that E. T. Walton continued to give credit and make advances to his brother when he knew him to be insolvent; for he had a right to trust his brother to any extent, in the ordinary course of business, without imperiling his legal right to secure his debt. Neither is the transaction to be deemed fraudulent merely on the ground that he took a confession of judgment for his debt; for he had a right, in the ordinary course of business, to receive a confession of judgment on account of a lawful debt at any time. But the fraudulent character of the transaction consisted in appellant's taking

the security he did under an agreement that it should be kept from the public — that is, not entered of record so long as the collection of appellant's debt was not thereby imperiled; thus deliberately giving his brother a fictitious financial standing, in his known failing circumstances, and placing him in a position to perpetrate fraud by obtaining credit, as in case of appellee, which would otherwise be withheld, while appellant held the confession of judgment with which to protect himself when others had trusted his brother and were helpless.   Howard Walton, relying upon his brother's agreement not to make the confession of judgment public, could with great assurance make the fraudulent representations to the cashier of the bank that his brother had no security and was not pressing him.   Without such agreement he would feel that judgment was likely to be entered against him at any time, and this would have a tendency to restrain him in his dealings with others.   Confessions of judgment are intended to be entered of record in the court.   Without such entry a confession of judgment is only an acknowledgment of a debt, and while the withholding of a confession from the record for a considerable length of time may not be necessarily fraudulent, an agreement between the party giving and the party receiving such an instrument that it shall be kept from the public, or that it shall not be entered of record for an unreasonable or indefinite time, is one of the strongest badges of fraud.

It is proper to be observed that the procedure for entering judgment by confession has been repealed since the time of the transactions referred to in this opinion. It follows from the above conclusions that the judgment should be affirmed.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*

MR. JUSTICE HAYT, having presided at the trial in the court below, did not participate in this review.