## JANUARY TERM, 1899.

[No. 1414.]
### ROSE ET AL. v. DUNKLEE.

12  403
s12  421
s12  424
12  403
14  178
14  262
12  403
18  257
12  403
20  559

1. FRAUDULENT CONVEYANCE—PRACTICE.

In an action to set aside a conveyance as in fraud of creditors and to
have the property subjected to the debts of the grantor, where the
defendant presented no issue in the trial court as to the value of
improvements claimed to have been put on the property by defend-
ant after the conveyance, nor offered any evidence, nor asked the
court to make any findings on that question, he is not in a position
to raise that question on appeal and ask a reversal of the judgment
on that matter.

2. FRAUDULENT CONVEYANCE—INSOLVENCY.

To prove that a grantor in a voluntary conveyance was at the time in-
solvent, so as to render the conveyance void as to creditors, it is
only necessary to show that the amount of the debts so nearly
approximates the value of property owned by the grantor that the
conveyance would have a direct tendency to impair the rights of
creditors if they should attempt to enforce collection by judicial
process.

3. SAME.

To sustain a voluntary conveyance as against existing creditors, the
property remaining to the debtor after such conveyance must be
clearly and amply sufficient to satisfy his' debts.   To prove insol-
vency in such case it is only necessary to show that the debtor was
embarrassed and in doubtful circumstances, and his solvency or insol-
vency may be judged by whether or not the property retained after-
wards proved sufficient to pay the debts.

4. CONVEYANCE—RECORD—NOTICE—LIMITATION.

The recording of a deed of conveyance is constructive notice only to
persons claiming under the same grantor and under the same chain
of title.   The recording of a voluntary conveyance is not construct-
ive notice to creditors of the voluntary character of the instrument,
or of the insolvency of the grantor, so as to start the statute of
limitation against an action to set aside the conveyance as in fraud
of creditors.

5. LIMITATION—FRAUD.

Under section 2174, Gen. Stats., providing that bills for relief on the
ground of fraud shall be filed within three years from the time of
the discovery of the fraud, before the statute of limitation begins

to run against a creditor in an action to set aside a fraudulent conveyance, the creditor must have knowledge of the facts going to constitute the fraud. If the conveyance was voluntary he must have knowledge of that fact and of the insolvency of his debtor.

6. LIMITATION—CAUSE OF ACTION.

Under section 2174, Gen. Stats., requiring bills for relief on the grounds of fraud to be filed within three years after the discovery of the fraud the statute of limitation does not begin to run until the cause of action has accrued, although the party applying for relief may have discovered the fraud before the time the cause of action accrued.

7. LIMITATION—FRAUDULENT CONVEYANCE.

The statute of limitation will not begin to run against an acti n by a creditor to set aside a voluntary conveyance until his right of action has accrued by reducing his claim to final judgment and the return of his execution *nulla bona*, and the fact that he might have sued out a writ of attachment does not affect the matter.

*Appeal from the District Court of Arapahoe County.*

Mr. B. F. HARRINGTON, for appellants.

Mr. GEO. F. DUNKLEE, *pro se.*

Mr. O. E. JACKSON, for appellee.

BISSELL, J.

The controversy between these parties has been before the court in various forms and in some of its phases has been re-presented to us in the argument of two other causes submitted since the original decision of this particular case. It has occasioned us a great deal of difficulty, and while it may appear to be free from doubt when our position is fully stated, the various arguments which have been had before us have led to a re-examination of the specific question on which the appeals have been generally rested and the defense based, and we have deemed it best to reformulate the opinion in this case, and fully as we can, and clearly as we may, state our conclusions. The result is in some of its aspects precisely like that antecedently reached, although in one particular it

extends the rights of the appellee and concludes the appellants on one matter respecting which as we originally looked at the case they were entitled to a further hearing.

From 1883 to 1888 one Otis, who was an employee of Elizabeth Rose, earned wages which were unpaid when he brought his suit and obtained judgment in 1888 for $1,221. From that judgment Elizabeth Rose, the defendant, prosecuted an appeal to the supreme court, wherein the judgment was reversed for errors exhibited in the opinion and the cause sent back for a new trial. In April, 1893, the cause was retried and Otis had a verdict. A motion for new trial was interposed, various proceedings had under our practice, the objections to the verdict and procedure were overruled, and final judgment entered. Between the commencement of the suit and the disposition of the motion for a new trial, and in January, 1893, the defendant Rose deeded to her daughter, Mrs. Riddle, who is a codefendant in this suit, a large amount of property. The deed was executed in January, acknowledged in February, but was not recorded by Mrs. Riddle until the day the jury rendered the verdict against her mother Mrs. Rose. The history of this particular case with other facts which are illustrative of the controversy are set out and commented on in the case of *Otis v. Rose et al.*, 9 Colo. App. 449. This case is referred to because that litigation and the facts which it developed are more or less explanatory of the situation in this cause. Since they are neither vital nor pivotal in the determination of this particular appeal, it is enough to refer to that case, and parties who may be interested in tracing the history of the litigation, taking the various opinions together, will be abundantly advised of the transaction out of which the litigation has grown. After that judgment was recovered the cause was appealed to this court and the judgment affirmed. Thereafter Otis brought suit to set aside the conveyance made in January, 1893. The basis of the suit was the alleged fraudulent character of the transfer by Mrs. Rose to her daughter. The consideration which was set up in that suit as establishing the *bona fides* of

the conveyance was the settlement of a very ancient claim
which grew out of an inheritance which passed to the daughter
when an infant on the death of her father.   The conveyance
made in the settlement of this claim was attacked as fraudu-
lent in fact, and the object of the suit was to subject the
property conveyed to the payment of the judgment.   Otis
failed and we affirmed the judgment in an opinion which is
reported in the 9 Colo. App. heretofore cited.   Thereafter
Otis transferred his judgment to Dunklee who brought this
suit.   From the allegations and the proof, it appears that
after Otis had earned his wages and Mrs. Rose had incurred
the debt and he had recovered the judgment which was
reversed, Mrs. Rose conveyed to Mrs. Riddle two lots which
are the subject-matter of this action, and described as lots 1
and 2, Rose's subdivision of block 3, Lakeview.   At the time
of the conveyance the property had not been platted as a
subdivision, or if platted, the description was inaccurate and
omitted a portion of the lots intended to be conveyed and
a subsequent deed of quitclaim was executed to cure this
defect.   Otherwise this latter deed is of no importance.
The original conveyance of these two lots was made in 1890.
The consideration expressed was $1.00 and the purpose of the
transfer is very clearly exhibited in the testimony.   The
condition of the property at the time of the transfer and the
delivery of the deed is quite plainly shown by Mrs. Riddle's
evidence.   According to her version of the transaction the
conveyance was intended as a wedding gift.   She moved into
the house which had been built on the lots prior to her mar-
riage, although it was not entirely finished though sufficiently
so for the purposes of occupancy.   According to her story
the lots and the house were intended as a wedding present,
and although the matter was not made, otherwise than as a legal
result, the subject-matter of an issue, or of testimony offered
pro and con with reference to the pivotal question of fact, it
clearly transpired from what Mrs. Riddle said that the house
was built and with the lots as thus improved transferred to
her and intended as a gift on her marriage.   The only evi-

dence which she gives respecting it is found partly in her direct and partly in her cross-examination, and in this form:

"Q. Did you build a house on these lots?

"A. Yes, sir.

"Q. When?

"A. I do not know just when it was commenced. We went into it after we were married.

"Q. And then you commenced building before you were married?

"A. In April or May. It was not quite built, but we went right in. It was being built before we were married, and before I got the deed. The house cost $1,465, and the furnace we put in the following fall cost $65.00, and the barn and fence we built separate from the house cost $72.00. We have since built two porches that cost $75.00, and the putting in of the lawn and getting it graded, etc., cost us nearly $100, I have forgotten just the number of dollars. I have been living there all the time since with the exception of about six weeks. My home has been there all the time. My mother was owing me at that time, $4,468.80. I possibly may not have figured it correctly. I figured it at simple interest. She owed besides $1,000 to a Mr. Mann for the use of W. G. Cowan. The debt was incurred before I was married.

"Q. And the house and improvements were put on there before the deed was given to you?

"A. It was given as a wedding present, and we did not get it until the day we were married.

"Q. And at that time your mother was owing you this sum?

"A. Yes, sir, but that was never taken into consideration; it was a gift the same as to the other girls. I have these thirty-three lots now, yes, sir. They are clear, except the taxes."

It is thus apparent that the property as improved was deeded to the daughter as a wedding gift, having been arranged to this end, and there is nothing in the testimony which denotes or compels us to conclude, or even justifies us

to infer, that the daughter built the house or improved the property save as to what may have been put into it after she had moved in under the deed. We are thus particular in stating the exact situation respecting the improvements because it is seriously contended that whatever rights Dunklee had to set aside the conveyance and enforce the lien of his judgment on the property, could extend only to the lots themselves and could not include the improvements. We are very frank to say that on the original hearing we inclined to that opinion and we were moved to return the case for evidence respecting the value, and limit Dunklee's rights in this particular. A careful re-examination of the question in the light of this testimony and in the light of the issues which the defendants tendered has led us to a different conclusion. It will be remembered we before adverted to the limitation on the issues which was followed by a statement of the testimony. We will now advert to the issue as framed and comment on and determine the force and effect of a stipulation made at the time of the trial. Suit was brought to set aside the conveyance of this property. The complaint was full in its averments respecting the commencement of the suit by Otis, the trial of the cause before the jury, the motion for a new trial, the entry of judgment, the filing of the transcript in the office of the county clerk, the affirmance of the judgment, the issuance of an execution, an alias, and a levy on these particular lots, and then set out the conveyance which was charged to be voluntary. The complaint then proceeded with a full averment respecting the insolvency of the defendant Rose, her inability to pay her debts and the intent both actual and legal to defraud her creditors and especially the claim and judgment owned by Otis, and that the conveyance in fact operated as a fraud on his rights and prevented his recovery. This complaint the plaintiff amended by interlineation and then a demurrer was filed to the amended complaint, and it was again amended by the insertion of an allegation numbered in the record $14\frac{1}{2}$, wherein he set up a failure to discover the fraud and the facts constituting it within three years next

preceding the commencement of the action. The allegation was as full as it well could be on a subject of this sort where the fraud was constructive rather than actual, and set out in some detail the circumstances which enabled the plaintiff to ascertain that a legal or constructive fraud had been perpetrated on him by the execution and delivery of this voluntary conveyance. It appeared from those allegations that it was not until the trial in 1895 of the case against Mrs. Rose and Mrs. Riddle to set aside the conveyance of the main part of the property, that the extent and character of the indebtedness, the amount of it, and the actual insolvency was discovered by the plaintiff or his assignor. To the complaint as it originally stood, the defendants interposed an answer which only raised the issue on want of knowledge and information as to the issuance of an alias execution and its delivery and a denial of the insolvency and want of knowledge respecting the assignment of the judgment. After the complaint had been amended and a demurrer was confessed and $14\frac{1}{2}$ inserted, there was a motion to strike out which was overruled. The demurrer was overruled and the case evidently came on for trial and then it was stipulated between counsel that the complaint as now amended should be treated as answered and denied without further answer. This order of court was made on stipulation of counsel, although the substance of it is reincorporated into the bill of exceptions in the same form that the allegations of the complaint as now amended shall be treated as answered and denied. It is not important to construe the stipulation and determine whether it was broad enough to raise a complete issue on all the allegations of the complaint because the parties tried the case treating it as at issue and offered evidence. The testimony was principally directed to two propositions, the value of the property, and the insolvency of Mrs. Rose resulting from the main transfer which was upheld by the court's findings and by the antecedent opinion of this court. It will be observed from this statement of the issue and of the case made by both parties, that no issue was raised respecting the making of the improve-

ments on the lots after the transfer by Mrs. Riddle, nor that
she was equitably or otherwise entitled to have the improve-
ments on the lots estimated and determined and relieved from
the force and effect of any lien which the plaintiff might
establish.    Neither side treated this question as an open or
debatable proposition, and the defendant Riddle did not seek
to establish any equities in the premises because her own
money had built the improvements and the record exhibits
nothing respecting it except the testimony which has been
quoted.    We have therefore concluded upon mature consid-
eration that the defendant Riddle failed to exhibit or prove
any equities with respect to the improvements, and that the
testimony which she gave on the subject did not establish in
any legal or satisfactory form, that she built the house with
her own money and was entitled to have its value considered
or determined, and the lien which the plaintiff acquired by
the judgment confined alone to the realty and its value as it
was before improvement.    The court made no finding about
it, expressed no opinion on it in his announcement, nor did
the defendant request any specific finding or raise any ques-
tion as to the validity of the judgment or the decree on this
basis.    We therefore conclude that since the defendant Rid-
dle failed to present an issue on this subject, offer testimony
about it or request the court to make any finding concerning
it, she is in no condition on this appeal to either suggest or
raise or insist on any reversal of the judgment on this matter.

What we have already stated clearly exhibits the facts that
the conveyance was voluntary.    After an execution had been
issued on the Otis judgment and returned *nulla bona,* and
the former suit to set aside the conveyance of the other lots
to Mrs. Riddle had been determined, the assignee had a right
to file his bill to set aside the conveyance of two lots because
the conveyance was voluntary and fraudulent in law as against
a then existing creditor, Otis.    The case very clearly shows
that the conveyance was wholly without consideration and
the property a gift to the daughter in view of her approach-

ing marriage and intended as a provision similar to what had been antecedently made to her sisters who married.

The case is environed with difficulties. The conveyance was voluntary. Voluntary conveyances are usually invalid against existing creditors and on proper bill may be set aside. The preliminary inquiry always is, whether the conveyance is in the contemplation of the law voluntary because of the insolvency of the grantor. The court, though making no distinct findings of fact, rendered an opinion wherein the facts are stated from which it appears the court concluded that Mrs. Rose was in fact insolvent at the time she made the conveyance of these lots to her daughter. It is quite true the evidence discloses that at this date Mrs. Rose owned a very considerable amount of property in Lakeview which was acreage property of an uncertain value according to the testimony of the witnesses who place it at various sums, varied of course by their judgment, interest, and conclusion respecting its situation and worth. Whatever this may have been, however, it very clearly appears from the evidence in this case, and the record and opinion in the other, all the necessary parts of which are presented by this record, that the balance of her property other than these lots was transferred to Mrs. Riddle in the payment of a very ancient debt. While this latter conveyance was attacked as fraudulent in fact, the contention was not supported, but the court concluded that the consideration was a valuable one and not so largely in excess of the debt as to be fraudulent. It therefore appears that Mrs. Rose conveyed substantially all of her property at the time Otis got his verdict, and left nothing with which to pay the remainder of her debts. Of course, it is contended by the appellant that there was a very wide difference between the amount of her debts and the value of her property, and the circumstances of the transfer to the daughter of the balance in the liquidation of her claim does not evidence an insolvent condition in such manner as to enable us to conclude, as a matter of law on the proof, that Mrs. Rose was insolvent when in 1890 she deeded these two lots to Mrs. Riddle. We

confess it is a fairly debatable question, and had the court found Mrs. Rose was solvent, or that she retained enough property to satisfy her then existing creditors, its conclusion might have been upheld.    When it concluded on all the proof that in reality Mrs. Rose was without sufficient property to liquidate her existing debts, we are unable to dissent from this conclusion.    It will be remembered, that according to the judgment and finding in the other case, Mrs. Rose owed Mrs. Riddle a large amount of money at the time she owed this debt to Otis, and at the time she made the deed to her daughter, and the question whether a person is or is not solvent is not ascertained by the absolute striking of a balance between the debts on the one side and the ascertained value of the property on the other.    A slight difference in favor of the amount of the property, or in favor of the amount of the debts, will not necessarily conclude the question.    The courts have put it in various ways.    Wherever the amount of the property so closely approximates the amount of the liabilities that the conveyance would have a direct tendency to impair the rights of creditors if they should attempt to force collection by judicial process, the debtor is adjudged insolvent. The better way to ascertain the real worth of the property is to look at the results, rather than at the evidence of witnesses concerning value.    If, in the end, as the result of the situation, it turns out that the debtor is insolvent and owes more than he is able to pay, this is taken as sufficient evidence of his insolvency as to existing creditors to permit them to attack a voluntary conveyance.    The property which must remain to the debtor after such a transfer must be as some of the cases put it, clearly and amply sufficient to satisfy his debts, and it is enough in such a case to show that the grantor was embarrassed and in doubtful circumstances and his solvency or insolvency may be judged by what happens.    *Kehr v. Smith,* 28 Wall. 31; *Wilson v. Buchanan,* 7 Gratt. 334; *Izard v. Middleton,* 1 Bailey ( S. C. Eq.), 221; *Parkman v. Welch,* 19 Pick. 231; *Patterson v. McKinney,* 97 Ill. 41; *Marmon v. Harwood et al.,* 124 Ill. 104;    *Patten v. Casey,* 57 Mo.

118; *Potter v. McDowell*, 31 Mo. 62; *Miller v. Wilson*, 15 Ohio, 108.

In the light of these authorities and the principles which they declare, and on the record as it stands, we must conclude, and we therefore hold, that Mrs. Rose was insolvent at the time she deeded these two lots to her daughter, the conveyance was voluntary, and therefore, in law, fraudulent as against the existing creditor, Otis. This troublesome question being resolved against the appellant, the other matters to be determined are of less difficulty.

We now approach the main legal question which has been urged on this appeal, and is urged in the other cases which have since been submitted to us. The defense other than as to the one question of fact respecting the solvency or insolvency of Mrs. Rose after the transfer to her daughter was based on the statute of limitations. According to the argument, the applicability of the statute is conclusively determined by the fact that the conveyance was in 1890 and the suit begun in January, 1896. Our statute respecting bills for relief is found in two sections of the General Statutes of 1883, numbered 2174 and 2175, and they are:

" Bills for relief, on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards.

" Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after."

The argument is, that since the first section, 2174, enacts that bills for relief on the ground of fraud shall be filed within three years after its discovery, the statute begins to run the instant the fraud is discovered, whether the plaintiff then had, or did not have a cause of action against the defendant. The argument continues that since the deed was made in 1890, and was with a recited consideration of $1.00, it was thereby to the notice and knowledge of the plaintiff conclusive information that the conveyance was voluntary; that he

was charged with notice of it, and must therefore file his bill within three years thereafter that constructive notice, whether he had or had not a right of action. Condensed and summarized, this is the argument, and with it we disagree. Not adhering to the order of the statement, we first observe, the plaintiff is not chargeable with the notice furnished by the record of the deed. We have been cited to cases in Iowa which seem to hold that the notice given by such a record is a notice to a creditor, and that it may start the statute running regardless of the situation or condition of his cause of action at the time he gets the information. If this is the legitimate deduction of the Iowa cases, we must refuse to yield our assent to their conclusions. They do not commend themselves to our judgment, as a matter of law we do not believe that they are legitimate constructions of our statute of limitations, nor that they can be defended and upheld by the well settled rules governing the interpretation and application of similar statutes. As we look at it, they are opposed to the decisions of the highest tribunal in this state, and whether we do or do not agree with them in principle, we should be bound to follow them. We prefer, however, to put our decision on the authority of our own cases and absolutely dissent from the conclusions of counsel, even if we concede that they have been properly interpreted. Under the recording acts of this state a notice of conveyance constructively given is the equivalent of actual notice to certain persons and under certain conditions. As we look at it, our supreme court has passed on this question and they have limited the doctrine of constructive notice to persons who are found in the same chain of title and who claim under the same grantor in the chain by subsequent purchase or transfer. Constructive notice extends to no other persons. As they put it, " only to those who are bound to search for it as subsequent purchasers and mortgagees, and all others who deal with it on the credit of the title in the line of which the recorded deed belongs." *Gillett v. Gaffney*, 3 Colo. 351.

This doctrine is supported in other states, and is one which

commends itself to our judgment.    *Ward v. Thomas,* 81 Ky.
452 ;  *Fox v. Zimmerman et al.,* 77 Wis. 414 ; *Martin, Assignee,
v. Smith,* 1 Dillon, 86.

The same rule was in a way expressed in a case recently
decided by this court at the September term, being *Kenney
v. The Jefferson County Bank, ante,* p. 24.    An evident diffi-
culty in the application of the doctrine to the present situation
springs from the consideration that the fraud complained of is
one in law and constructive rather than actual.    The transfer
was entirely valid and binding between the parties, the consid-
eration was love and affection, recognized as one of the most
praiseworthy.  Had Mrs. Rose remained solvent the deed was
good against Otis.    To charge him with notice of the vol-
untary character of the conveyance when he was unadvised
as to the financial condition of the grantor is stretching the
doctrine of constructive notice to the point at which it ought
to, and must, break.    The consideration put into deeds can-
not in this country be taken as an evidence of the actual
price paid.    It is often more, frequently less, and is a vague,
uncertain, indeterminable quantity, significant and indicative
of nothing.  If we should hold that a creditor who is without
right to file a bill because he is a general creditor, and not one
by judgment, is bound to take notice of recorded deeds and
of the expressed consideration, and therefore conclude that the
conveyance is voluntary, it would be carrying the doctrine of
constructive notice to an extent unwarranted by precedent
and unjustified by the law which ought to prevail in determin-
ing what is or is not constructive notice.

This leaves then the inquiry, whether the case as exhibited
is brought either within the terms of the statute properly
construed, or within its terms as the appellants construe it.
In its opinion the court practically finds, as a matter of fact,
that the plaintiff did not discover the fraud until he learned
of the secret debt of upwards of $4,500, which Mrs. Rose in-
sisted she owed Mrs. Riddle, and which was found to have
been the real consideration for the transfer of the great bulk
of Mrs. Rose's property.    While this opinion is not in the

specific definite form of findings of fact, it is a statement of the court's conclusions on the evidence, and we find it abundantly supported by the testimony. Under any construction of the statute then, it must be true that this suit was brought in ample time because the plaintiff sustained his contention that he had no knowledge of the facts constituting the fraud against him until the facts about it were elicited on the trial which was within the three years. Taking this view of the case, even though it be conceded, which it is not, that section 2174 makes an absolute three years' bar under any and all circumstances, the statute had not run so as to conclude the plaintiff at the time that he instituted this suit.

We do not concede, however, that this is the proper construction of that enactment. The situation and circumstances of the case do not require us to enter into an exhaustive discussion of sections 2174 and 2175 and determine all the conditions and circumstances under which either the one or the other, or both, may become operative. The difficulty with the appellants' contention as a legal proposition is, that he assumes that section 2174 is a specific limitation, and that it will of necessity bar an action where the plaintiff has discovered the fraud although at the time of the discovery he did not have, and for a long time thereafter could not acquire, the right to begin his suit. As we understand it, this is in the face of a fundamental principle which underlies the statute of limitations in the various states. Statutes of limitation can never become operative as we understand the law, until there is a cause of action to which it may be applied. In other words, as it is put by a learned text writer: "The time limited * * * is to be computed from the time at which a right of entry accrues, and from the time at which a creditor is authorized first to commence a suit." Angell on Limitations, chap. 6, § 42. The same doctrine has been expressed in many courts, and it has been decided in New York that the time of the commission of the fraud is not of necessity the point from which the limitation is to be computed, but that time must necessarily be the point at which the plaintiff ac-

quired the right to assail it.   In that state a similar provision, although not exactly like it, has been thus construed and the court held that the cause of action is not necessarily deemed to accrue when the right of action arises, but it is deemed to accrue when the discovery is made.   Or to put it in other words, when we take these two sections of our statute together it may be, though we do not expressly decide it, that section 2175 which is the five year limitation, will be an absolute bar to the bringing of a suit on the ground of fraud, provided that at the time the action accrued the party had knowledge of it, and on the other hand, it may be that even though the cause of action had accrued and the creditor had a right to file the bill, yet, being without knowledge of the fraud and subsequently discovering it, he might within three years thereafter its discovery file a bill, although the statutory period limited by the other section had long since gone by. While the New York statute is not in the same form, nor in the exact language as ours, and perhaps in this respect is a statute with a proviso, yet, the principle on which those decisions are based must necessarily be the true rule by which the rights of parties with respect to statutory limitations are to be determined.   *Weaver v. Haviland,* 142 N. Y. 534 ; *Gates v. Andrews,* 37 N. H. 657 ; *Suber v. Chandler,* 18 S. C. 526 ; *Brown v. Campbell et al.,* 100 Cal. 635 ; *Ohm v. Superior Court,* 85 Cal. 545 ; Bump on Fraudulent Conveyances (3d ed.), pp. 270, 271 ; *Erickson v. Quinn,* 47 N. Y. 410 ; *Harrell v. Kea,* 37 S. C. 309.

If the necessities of the case demanded it, we would cite with approval the case in the 18 South Carolina above referred to, to the proposition that the statute is inoperative until a right of action accrues, and since in this case neither Otis nor Dunklee could bring a suit to set aside this voluntary conveyance until Otis had recovered his judgment and it had been affirmed, there is no statute of limitations which could bar his right of action whether he had or had not knowledge of the fraud giving him his right.   The trouble with the other doctrine would be, that so far as cases of this descrip-

tion are concerned, where the fraud is a constructive one, and the conveyance is one which in law may be fraudulent and is not fraudulent in fact, it cannot in law nor in morals be said, that the conveyance is invalid as between the grantor and the grantee, or as between the grantor and grantee and the plaintiff, when it was made on what, as between the parties, was a deed sufficient in consideration and conveyed a good title. If as a matter of fact it so happened, that the creditor retained property enough to answer the execution, the creditor could not attack the conveyance or assail it because it in no manner affected his rights. It is only because of the return of the execution *nulla bona* and the acquisition of his right to begin suit, or as it might be put, because his cause of action has accrued, that the transfer becomes assailable and he may maintain a bill to set it aside for want of consideration.

In any view, therefore, which we take of the case, whether with regard to the time of the discovery, or whether we take it as a matter of strict statutory construction, viewed in the light of principles by which statutes of limitations must be construed, the statute of limitations had not run at the time the bill was filed and the plaintiff is not and was not barred his remedy.

Another contention earnestly insisted on, is that the construction for which the appellants contend must be right and that he was not without remedy for the reason that he might have sued out a writ of attachment and levied it on the property and thereby secured his rights. We are cited to a Missouri case which seems to hold the doctrine, but it does not accord with our judgment of the law. The difficulty with the present doctrine is, that the right to sue out a writ of attachment can in no event be determinative of the plaintiff's cause of action because even though we should concede that the writ might have issued in the present case in aid of the original suit, it is not a principle of universal application. Statutes of limitations are general in their terms and must be so construed that they will apply to the various descrip-

tions of actions named in the act and over which the bar is given by the statute. Many cases might be imagined where the right to file a creditor's bill to set aside a transfer or a transaction because of its fraudulent character, could not be saved or preserved by the issuance of a writ of attachment. Under our system these ancillary writs can only go in those cases where the suit is brought on contracts either express or implied. Because it happens in these cases that the action was on a contract, a dozen other cases might be imagined to which the same statute of limitations would necessarily be applicable where the writ of attachment could not be obtained. Take the very case cited by counsel in support of one branch of his contention : *Wood v. Carpenter*, 101 U. S. 135. Therein by means of concealment, fraudulent transfers, misrepresentations and other active frauds practiced on the plaintiff; the defendants succeeded in binding him to sell a judgment for fifty per cent of its face. It was afterwards learned by the plaintiff, that the defendant himself furnished the money for the purchase of the judgment, that the transfers were made with the intent to delay and defraud him, and the settlement was procured by the active fraud and misrepresentations made by the purchaser. He thereupon filed a bill to set aside the transfers and subject the property to the payment of the unpaid part of his judgment. Manifestly a writ of attachment could not issue in such a case, and yet the same statute of limitations would be applicable as in the present. Other illustrations would be in cases where property had been destroyed by negligence, or a person had been injured by the negligence of the defendant and a suit was brought to recover damages. Attachment could not issue in aid of such suits. Intermediate to the injury and the recovery of the judgment, the wrongdoer might put his property out of his hands by means of conveyances which as against such judgment creditors would be fraudulent. Undoubtedly a bill would lie to set aside the transfers and subject the property thus conveyed to the payment of the judgments, the facts constituting the cause of action otherwise all concurring,

and yet, the same statute of limitations would be applicable, and the plea that the attachment might have issued would no longer be available. These illustrations very sharply exhibit the fallacy of the contention that because in one case the ancillary writ might go, it is therefore an answer to the proposition that the statute must be so construed as to hold that it commenced running at the time the conveyance was made and not at the time that the cause of action accrued.

For the foregoing reasons the judgment of the court below will be affirmed.

*Affirmed.*