## No. C-1221

**Estate of Carl T. Barnhart and Irma M. Barnhart, surviving spouse v. Patricia E. Burkhardt, Frank Barone, Jr., and Elnora V. Grover**

(574 P.2d 500)

Decided January 30, 1978.

Samuel J. Eaton, for petitioner.

James S. Kimmel, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to consider the validity of certain *inter vivos* transfers made by the decedent, Carl T. Barnhart. We affirm the decision of the court of appeals in *Estate of Barnhart, et al. v. Burkhardt, et al.,* 38 Colo. App. 544, 563 P.2d 972 (1977).

From late 1973 to the time of his death, the decedent suffered from increasingly severe chest pain. In February 1974, the decedent's doctor informed him that his condition was serious, that it could lead to coronary thrombosis, and that he was a good candidate for open-heart surgery. The decedent refused to be hospitalized and began therapy with anticoagulants and pain-killers. The decedent's pain continued, but on April 1, 1974, he again refused to accede to his doctor's suggestions of hospitalization and surgery. This scenario occurred again in May; and on June 19, 1974, the decedent died from coronary thrombosis. He was survived by the petitioner, Irma M. Barnhart, his wife of sixteen years; and the respondents, Patricia Burkhardt (formerly Barone) and Elnora V. Grover, daughters by a previous marriage, and Frank Barone, Jr., his former son-in-law.

The decedent executed a will, dated April 12, 1974, which was lodged with the Probate Court of the City and County of Denver by Mr. Barone, named in the will as executor. In his will, the decedent left the petitioner one half of his estate. The petitioner discovered, however, that the estate had been depleted of its assets by a series of transactions between the decedent and the respondents.

Thereupon, the petitioner filed a motion in the probate court requesting that she be named as personal representative of her husband's estate. She requested that all *inter vivos* transfers made by the decedent be

brought back under the court's jurisdiction, alleging that the transfers constituted a fraud on her rights because the decedent had acquired the subject property during their marriage and had transferred it in contemplation of death.

The contested property consisted of four savings accounts, certain United States savings bonds, and real estate. The decedent opened savings accounts in joint tenancy with Ms. Barone (Burkhardt), in 1963; Ms. Grover, in 1965; Mr. Barone, in October 1972; and Patricia Williams,[1] in 1974. Funds in these accounts were deposited by the decedent only. Mr. Barone was unaware of the account until shortly before decedent's death, and probably Ms. Williams was unaware of the existence of these accounts until after the decedent's death. On April 4, 1974, Ms. Grover withdrew $16,636.16 from the joint savings account her father had opened. On April 4, 1974, the decedent, accompanied by his other daughter, Ms. Burkhardt (Barone), withdrew $16,609.16 from their joint account and gave those funds to her.

The savings bonds were Series H bonds, each in the sum of $4,500, held in joint tenancy by the decedent and each of his daughters. The petitioner testified that these bonds were originally Series E bonds in decedent's name only, purchased, in part, with funds contributed by her. When the decedent had proposed to change them to Series H, he had not told her that he intended to make his daughters joint tenants with him in those bonds.

The real estate was the former family residence of the decedent, his deceased first wife, and his two daughters. The deceased executed a deed conveying the property to his daughters as joint tenants on April 12, 1974. The deed was recorded by Mr. Barone that same day and held by him. Barone was a nonpracticing attorney. The daughters were unaware of the existence of the deed until after their father's death.

The probate court concluded after a hearing that the augmented estate provisions of the Colorado Probate Code[2] did not apply because the decedent had died prior to the Code's effective date.[3] The court held that there was no evidence that any of the transfers were colorable or fraudulent and that all the transfers were effective when they were made.

The court of appeals affirmed in part and reversed in part. It affirmed the probate court as to the nonapplication of section 15-11-202, C.R.S. 1973, to the decedent's estate. The court held that the funds removed from the joint tenancy savings accounts (Burkhardt and Grover) were bona fide gifts effective upon the irrevocable delivery of the funds.

---

[1] Ms. Williams is the petitioner's daughter by her first marriage. She was not a party to the action, but the account was considered by the probate court and the court of appeals.
[2] Section 15-11-202, C.R.S. 1973.
[3] July 1, 1974.

The court affirmed the probate court's findings as to the remaining savings accounts. It also affirmed the gift by deed, relying on *Thuet v. Thuet,* 128 Colo. 54, 260 P.2d 604 (1953). The court reversed, however, on the issue of the transferred savings bonds. It remanded for a finding of whether the petitioner had contributed to the purchase of the original bonds, thus leaving open the possibility of a constructive trust. *See Estate of Barnhart, supra.*

We affirmed the opinion of the court of appeals.

I.

■ Joint tenancies in personal property are controlled by section 38-11-101(1), C.R.S. 1973.[4] "[T]he legislature has pre-empted the field and declared the public policy with respect to the disposition of property held . . . in joint tenancy. . . ." *Smith v. Greenburg,* 121 Colo. 417, 218 P.2d 514 (1950).

■ Generally, one spouse has the right to make *inter vivos* transfers of his or her property to any person whom he or she chooses. This rule applies even if the end result, or even the express purpose, is to deprive the other spouse of his or her inheritance. *Moedy v. Moedy,* 130 Colo. 464, 276 P.2d 563 (1954). However, the transaction must be bona fide and not merely colorable. A colorable transaction is one which is illusory, where, for instance, the donor intends to reserve the benefit of the property to himself for life. *Grover v. Clover,* 69 Colo. 72, 169 P. 578 (1921); *Smith v. Smith,* 22 Colo. 480, 46 P. 128 (1896). The trial judge found, and the record supports the finding, that the joint accounts the decedent had created with his daughters, his stepdaughter and his former son-in-law were bona fide, noncolorable transactions.

Our decision in *Scavello v. Scott,* 194 Colo. 64, 570 P.2d 1 (1977),[5] is distinguishable on the facts from the instant case. In *Scavello,* the decedent withdrew funds from joint accounts with his wife on the day of their separation. While their divorce with its consequent property settlement dispute was pending, the decedent had a cashier's check issued in the name of his niece and himself. Before the divorce was resolved, however, he died, and his niece cashed the check. We held that the transaction was colorable and illusory. The decedent still retained full ownership of the check, notwithstanding the pretense of making the check payable to his

---

[4]The statute provides that:

"An estate in joint tenancy in personal property is created if, in the instrument evidencing ownership of such property, it is declared that the property is conveyed, transferred, bequeathed, or held in joint tenancy or as joint tenants, whether or not additional words are used relating to tenancy in common or survivorship. Upon the death of any such joint tenants, the title to and ownership of such personal property passes immediately to and vests in the surviving joint tenant or tenants. Any grantor or transferor in any such instrument of conveyance or transfer may also be one of the grantees or transferees therein."

[5]*Scavello* was decided after the instant case was at issue.

niece as well as himself.

■ In the instant case, the decedent opened the accounts with his daughters a decade before his death, with their full knowledge. Ms. Grover, two months prior to her father's death, withdrew the funds from the account which she held jointly with him; decedent withdrew the funds in the other joint account and gave them to Ms. Burkhardt (Barone). She used those funds to purchase a home, title to which was in *her* name, not the decedent's. In both instances, the gifts were actually delivered to his daughters. Therefore, at the time of the withdrawal of the funds, the gifts were irrevocable and absolute, because the decedent parted with all interest in and dominion over the funds. *Johnson v. Hilliard*, 113 Colo. 548, 160 P.2d 386 (1945).

The petitioner's reliance on *Linker v. Linker*, 28 Colo. App. 136, 470 P.2d 882 (1970), is misplaced. In *Linker*, the court of appeals affirmed the trial court's finding of an illusory and colorable transaction. The decedent had attempted to transfer notes before his death, but continued to collect interest in his own behalf on the notes after the date of the alleged transfer.

■ We point out that it is not necessary for a joint tenant donee to have knowledge of the creation of the account, to sign a signature card, or to deposit or withdraw funds from the account in order to establish a valid joint tenancy in a bank account. *See In re Estate of Stamets*, 260 Iowa 93, 148 N.W.2d 468 (1967), and the cases cited therein; *Karlen v. Karlen*, 89 S.D. 523, 235 N.W.2d 269 (1975). Thus, we hold, as to the Barone and Williams accounts, the rights to the funds therein vested in Barone and Williams upon the death of decedent Barnhart, section 38-ll-101(1), C.R.S. 1973. *Cf. Urbancich v. Jersin*, 123 Colo. 88, 226 P.2d 316 (1950).

II.

In view of the fact that the court of appeals' discussions on the remainder of the petitioner's contentions are correct, we do not see the need to address those matters further.

The judgment of the court of appeals is affirmed.