**Charles L. LOVE and Gladys L. Love, Trustees for C. L. Love and Dean J. Love, Plaintiffs-Appellees,**

v.

**Mary M. OLSON, Defendant-Appellant,**

**Don G. Olson a/k/a Donald G. Olson, Defendant.**

### No. 80CA0378.

Colorado Court of Appeals, Div. I.

April 15, 1982.

French & Stone, Joseph C. French, David M. Haynes, Boulder, for plaintiffs-appellees.

Robert C. Burroughs, Ault, for defendant-appellant.

ENOCH, Chief Judge.

Defendant, Mary Olson, wife of defendant Don Olson, appeals the trial court's judgment declaring that a conveyance to her was fraudulent, and subjecting her property to execution by plaintiff, the judgment creditor. We affirm.

The trial court found that defendant, Don Olson (debtor), executed a $25,000 unsecured note payable to C. L. Love (creditor) and due on November 25, 1973. At the time the note was due, debtor had interests in two properties: the "Olson Farm," which he owned individually and had inherited from his parents, and other property which he owned in joint tenancy with his wife and which was subject to a deed of trust securing two promissory notes. This deed of trust was foreclosed in 1976.

On January 12, 1974, debtor borrowed $150,000 from another party, and executed a note and deed of trust covering the "Olson Farm" for that amount. Ninety-thousand dollars of the $150,000 received by debtor was deposited in a savings account owned jointly by debtor and his wife. The wife withdrew $80,000 from this account, purchased a new family home in which they both lived, and took title in her name alone. The use of the remaining $60,000 for the payment of other debts of the husband is not an issue. In October of 1974, the deed of trust was foreclosed on the "Olson Farm," and the farm was sold for $159,873. On May 20, 1975, creditor Love commenced this action to obtain judgment on his note and to set aside the transfer to the wife.

The trial court found that deposit of the $90,000 to the joint bank account, together with wife's subsequent withdrawal of the money, constituted a conveyance with intent to hinder creditors under § 38–10–117, C.R.S.1973, and declared that wife's new residence was subject to execution by the creditor to enforce the claim against debtor.

## I. THE CONVEYANCE ISSUE

### A.

Wife first contends that there was no conveyance because the alleged gift from debtor was never consummated. Wife reasons that debtor, by placing the money in a joint bank account, retained control, and that she had no power to complete the gift by withdrawing the money on her own and without any further action by the debtor. We disagree.

Whether the requirements of a gift have been met, *i.e.*, donative intent coupled with an act which consummates the gift, is a question of fact, and the trial court's determination, if supported by the

record, as it is in this case, is binding on review. *Estate of Ramsey v. State Department of Revenue,* 42 Colo.App. 163, 591 P.2d 591 (1979). A gift is complete and irrevocable when the donor loses all control over the subject matter of the gift. *Estate of Barnhart v. Burkhardt,* 38 Colo.App. 544, 563 P.2d 972 (1977), *aff'd,* 194 Colo. 505, 574 P.2d 500 (1978).

Here, the debtor voluntarily transferred the money to the wife by putting the funds at her disposal with intent that she should withdraw the money later. The record shows that debtor agreed with the wife that she should withdraw the money and that he helped her select a new home and negotiate for its purchase. The gift was perfected when the wife withdrew the money and converted it to real property in her own name. *Estate of Barnhart v. Burkhardt, supra. See Johnson v. Hilliard,* 113 Colo. 548, 160 P.2d 386 (1945). Under these circumstances, the gift is not defeated by the fact that it was wife, and not debtor himself, who actually authorized withdrawal of the funds. *See In Re Estate of Barnhart v. Burkhardt, supra.*

*Albers v. Young,* 119 Colo. 37, 199 P.2d 890 (1948), relied upon by wife, is not in point. There, the donor did not agree with the donee that the money should be withdrawn from the joint account, nor that it should be used to purchase other assets in the donee's name. More importantly, the money was never withdrawn by the donee, and the donor did not relinquish control over the money prior to his death.

### B.

Wife also contends that the transfer to her should have been characterized as repayment of a loan. We disagree.

■ Although husband and wife may stand in the relationship of debtor and creditor, a bona fide loan transaction must be established. *Knapp v. Day,* 4 Colo.App. 21, 34 P. 1008 (1893). Here, no such relationship was established. The only evidence to support wife's loan theory was testimony that she had brought $50,000 into the marriage and placed it at the disposal of the

debtor. There was no note executed, no interest agreed to or paid, and no other testimony that the parties intended this contribution to be repaid. Under these circumstances, the trial court did not err in characterizing the transaction as a gift rather than a loan.

### C.

Finally, wife contends that the money was not given to her because she merely withdrew what belonged to her. In effect, wife argues that she liquidated her inchoate interest in marital property by withdrawing her share of the loan proceeds. We find no merit in this argument.

■ A wife has an interest in property inherited by the husband in the sense that, upon dissolution, the appreciation, if any, in the property's value may be treated as marital property subject to division. *Santilli v. Santilli,* 169 Colo. 49, 453 P.2d 606 (1969). However, this interest vests only upon the occurrence of a statutorily enacted contingency such as divorce, separation, inability to support, homestead, or death. *In Re Questions Submitted by United States District Court,* 184 Colo. 1, 517 P.2d 1331 (1974). Since none of these contingencies occurred, wife was not entitled to distribution of her share of marital property, and the conveyance by the debtor to her constituted a gift.

## II. THE INSOLVENCY AND FRAUD ISSUE

■ Wife contends that, even if it is assumed arguendo there was a conveyance, the evidence failed to establish debtor was insolvent at the time of the conveyance. Creditor's response is that, where intent to defraud is proven, it is unnecessary under § 38–10–117, C.R.S.1973, to establish the debtor's insolvency. It is not necessary for us to determine which view is correct because the record supports both the trial court's findings that the debtor was insolvent at the time of the conveyance, and that debtor actually intended to hinder, delay, or defraud his creditors.

Wife argues that the trial court applied an erroneous test when it determined debtor was insolvent.

According to wife, the trial court should have applied the test incorporated in the *Uniform Fraudulent Conveyance Act,* which provides that a person is insolvent when "the present fair saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." *Uniform Fraudulent Conveyances Act,* 7A U.L.A. § 2(1) (1978).

The balance sheet approach implicit in the Uniform Act's definition has not been adopted in this state. Although the meaning of the term insolvency may vary with the legal and factual context in which it is considered, *Walton v. First National Bank,* 13 Colo. 265, 22 P. 440 (1899); *see, e.g., McPherson v. Railway Savings & Building Ass'n,* 93 Colo. 155, 25 P.2d 388 (1933), and is normally a question for the trier of fact, our review of the caselaw on this subject reveals several factors which a trial court should consider in reaching its conclusion that a debtor is insolvent. These factors include whether a debtor is able to pay his debts, with money or by application of his other assets, in the ordinary course of his business; *Rising v. Hoffman,* 116 Colo. 63, 179 P.2d 430 (1947); *Walton v. First National Bank, supra; see Glenn Justice Mortgage Co. v. First National Bank,* 592 F.2d 567 (10th Cir. 1979); whether the debtor has so little property left after the alleged fraudulent conveyance that his creditors' ability to collect their debts through judicial process is impaired, *Rose v. Dunklee,* 12 Colo.App. 403, 56 P. 342 (1899); and the type of business in which the debtor is engaged. *Walton v. First National Bank, supra.*

Here, the record supports the trial court's finding that debtor was insolvent at the time of the conveyance. Debtor was not gainfully employed near the time of the conveyance and paid his bills only by borrowing against his property. Debtor did not pay these loans in the ordinary course of his business and all his property was eventually lost through foreclosure proceedings. Finally, although debtor presented unrebutted testimony that the true value of the property exceeded the amount of his debts at the time of the conveyance, follow-ing foreclosure this debt remained unsatisfied, thus indicating that the ability of this creditor to collect his debt was impaired by the conveyance.

Therefore, we hold that the trial court did not err in finding debtor insolvent at the time of the conveyance.

Wife further contends there was insufficient evidence to support the trial court's finding that debtor intended to delay, hinder, or defraud his creditors. We find no merit in this contention.

The existence of fraudulent intent is a question of fact, § 38–10–120, C.R.S.1973, to be determined by the circumstances of each case. *Helm v. Brewster,* 42 Colo. 25, 93 P. 1101 (1908). *See Miller v. Kaiser,* 164 Colo. 206, 433 P.2d 772 (1967). Here, there was a conveyance by an insolvent husband to his wife, the husband obtained the benefit of the property conveyed by residing with the wife in the new family home, and there was no consideration for the conveyance. Under these circumstances, the trial court's finding is supported by the record. *See Chalupa v. Preston,* 65 Colo. 400, 177 P. 965 (1918).

Judgment affirmed.

PIERCE and KELLY, JJ., concur.