## The Maccabees et al. v. City of Ashland.

(Decided Oct. 8, 1937.)

FRANK C. MALIN for appellants.

S. S. WILLIS, PORTER M. GRAY and HANNAH, VAN SANT & McKENZIE for appellees.

Opinion of the Court by Judge Thomas—Affirming.

The city of Ashland, Ky., is one of the second class. Sections 3096-3102, inclusive, Ky. Sts., are parts of the charter of cities of that class, and they make provisions for and relate to the improvement of the streets of a second-class city at the cost of the abutting property owners. If the assessments against the property, which it is prescribed shall be made after the work is complete, are not paid in cash and the property owner within the period fixed for that purpose applies to be permitted to make payment under what the statute terms "the ten-year plan," then he may have the privilege of doing so. When the option is so exercised by the property owner, it then becomes the duty of the council to issue bonds distributed through a period of ten years for the amount of the entire series of bonds on the particular street improved, pledging the annual assessments throughout the period as a fund for the payment of the bonds and the interest coupons as they mature annually, in the amounts that the council designate to mature any particular year.

Such an improvement was made in the city of Ashland in 1925, and enough of the property owners along that particular improvement chose to discharge the burden against their property under the ten-year plan as to make the total amount for which bonds were so issued $47,500—the maturity periods of which were divided by the council so that something near an equal amount would mature each year throughout the period. The Maccabees, a fraternal organization, became the owners of a number of the bonds of $500 each, some of which matured in 1930, some in 1931, and' some in 1932. At the time of the filing of this action by it in the Boyd circuit court against the city of Ashland and its officers having duties to perform with the administration of the project, there had been collected and was in the hands of the city treasurer about $7,500. It was then apparent that the liens on the abutting property to secure the assessments did not and would not realize when collected a sum sufficient to meet all of the bonds for the total cost of the improvement of $47,500, and the city and its officers took the position that it was their duty to prorate on the entire series of bonds covering the whole ten-year period the amount that would be available for the purpose whilst plaintiff (the Macca-

bees) contended that, since there would be enough collected in the years when its bonds matured to pay them, it should be paid in full, upon the theory that the statute properly construed gave it such preference.

The city and its officers declined to so prefer it, and it filed this action against them for proper orders compelling them to distribute the fund according to plaintiffs' contention, which, under the stipulated facts, put in writing and filed in the cause, would create a preference of all bonds maturing at any particular year over and above the holders of subsequent maturing bonds in later years. Others of the appellants, similarly situated to plaintiff, intervened in the cause and asked to be made plaintiffs in the prosecution of the action—all of which was done—the interveners of course making a like contention to that made by plaintiff. There were also holders of bonds of a later maturing date who would be greatly prejudiced by the preference contended for, and they also came into the cause and opposed it.. There was also a paragraph in plaintiff's petition seeking personal judgment against the city for any deficit that might exist in the payment of its bonds out of the trust fund should the preference for which it contended be denied. In the written stipulation it is agreed—and it is also contained in the record—that the questions raised by that paragraph should be postponed for future determination, and it is not involved on this appeal; but the court did determine the question of preference, raised by plaintiff, against it, and held that the agreed available trust fund should be prorated among all the bondholders, regardless of the year in which their bonds matured. Complaining of that judgment, appellants prosecute this appeal.

Section 3096 of our Statutes among other things provides that: "The proceeds [of the assessments] shall, in each case, constitute a separate special fund for the payment of the improvement warrants issued [as the work progresses] for the particular work for which the assessment is made, or for the security and payment of the improvement bonds, if any are issued, as provided in sec. 3102 for such improvement." Intervening sections between that one and section 3102—as does also section 3096 from which the excerpt is taken—clearly, and to our minds most emphatically, point out that "the fund" referred to in the sections of the statute arising from the collection of the assessments should be

devoted to the equal payment of the entire amount of warrants or bonds that might be issued for the cost of the improvement. In fact, it is expressly said that the fund when and as collected shall in its entirety be set apart as security for the payment of the improvement bonds. Nothing in the sections down to 3102 contain any language other than the right to an equal distribution of such fund if it should eventually be or become insufficient to pay the bonds in full. Every bondholder, regardless of the year in which his bond might mature, was to be (as clearly indicated by the statute) upon an equal dignity in the right of payment.

But it is contended by appellants that because of certain language found in section 3102 of our Statutes, the Legislature intended by its employment to give priority to the bondholders when bonds matured in any particular year of the entire period, a preference over the assessments due for that year, and that they should be paid out of that fund the full amount of their bonds, regardless of what might happen to the fund so as to reduce it below the entire amount of the bond issue, during the unexpired time of the ten-year period. The language which it is claimed authorizes that interpretation is: "In any foreclosure suit brought by the city or any bondholder as provided herein it shall not be necessary to make the other bondholders parties, but the proceeds of the suit shall be paid into the city treasury to be applied to the redemption of matured bonds in the same manner as if the same had been paid without suit." It is contended that the words "to be applied to the redemption of matured bonds" were intended to give the preference that plaintiff insists upon. But clearly that direction was made upon the theory that there would be no deficiency in the collection of the assessments—in other words, that the trust fund for the payment of all of the bonds of the series would not eventually become insolvent. Therefore, when a collection of annual assessments should be made the city officers could in all propriety pay the bonds that matured that particular year, and that it would be their duty to do so. However, there is nothing in the statute, as we have pointed out, mandatorily requiring full payment of each annually maturing bond or bonds, if it be ascertained and demonstrated that the trust fund will eventually prove insufficient to meet all of the bonds of the entire series covering the period of ten years. On the contrary, as

we have endeavored to point out, sections prior to 3102 conclusively indicate to the contrary. But the same contrary indication is also contained in the same section, 3102. It provides for the issuing of the bonds "in anticipation of the collection of such part of the local taxes assessed and levied therefor as may not be paid within thirty days from the time of the assessment, pledging such taxes and the liens on the property for the payment of the principal and interest of [all] such bonds, and apply the proceeds thereof, exclusively, to the payment for the particular improvement in anticipation of the assessment for which the bonds are issued" (our interpolation). Similar language in other parts of that section is to the same effect, and it appears to us as being impossible to arrive at any other conclusion than that it was emphatically the intention of the Legislature not to provide for any preference in favor of the holder of any particular annual maturing bond or bonds as against any holder of any later maturing bond. It is also perfectly apparent that the Legislature *expressed* the determination that all bondholders should stand upon an equal footing and in language as strong and as plain as it could well employ.

Learned counsel for plaintiff is correct in one phase of his contention that his client is entitled to priority of payment, but which relates exclusively to the *time* that he may *demand* and receive payment. The entire trust fund, as we have concluded, is for the equal benefit of all bondholders throughout the ten-year period, but the holder of a bond that is not due is not entitled to demand payment until it becomes due, and when there is no insolvency in the fund then the holder of the matured bond has the right to be paid out of an existing fund before the holder of any future maturing bond shall be allowed to participate in that particular annual fund. The question, therefore, becomes injected into the case because of the insolvency of that fund, and which is always the case in a contention over the question of priority of payment, for if there were no insolvency each maturing allotment of bonds would be met as they matured. The Legislature no doubt directed the annually maturing bonds to be paid out of the annual collections of the trust fund for that year upon the conception that the total fund for all of the series of bonds was not only collectible but would be collected and create a fund sufficient to pay all the bonds of the entire series, regard-

less of the date of their maturity; and it was never intended by the language relied on to give the matured bondholder a preference so as to enable him to collect his bond in full, regardless of the fate of future maturing bonds. We find nothing in any of the cases or authorities cited by appellants that would authorize a contrary holding. The extreme cases upon which the greatest reliance is made, turn upon the construction of the particular statute involved and being interpreted by the courts, and because of its special language the court construed it to give the preference contended for.

It is a universal maxim in equity jurisprudence that, "Equality is equity." That maxim rests upon the solid rock of unalloyed justice. It should never be departed from or in any wise rejected, unless the trust instrument, or other writing relating to the question, clearly indicates that it was not intended to be followed. The trust instrument in this case is conceded to be the various applicable sections of the statutes cited supra, and we have endeavored to point out that there is no language contained in any of them whereby it is clearly, or otherwise, made to appear that the Legislature intended that the maxim should not apply.

Authorities supporting the conclusions reached are: Jewell v. Superior, 135 F. 19, 67 C. C. A. 623; New Orleans v. Warner, 175 U. S. 120, 20 S. Ct. 44, 44 L. Ed. 96; New Orleans v. Fisher, 180 U. S. 185, 21 S. Ct. 347, 45 L. Ed. 485; State v. Little River Drainage District, 334 Mo. 753, 68 S. W. (2d) 671; V. 6 McQuillen on Municipal Corporations (2d Ed.) sec. 2504; and 2 Dillon on Municipal Corporations, V. sec. 893. The question is also extensively discussed in an annotation appearing on page 717 of 90 A. L. R., in which the apparent divergent views of the courts are pointed out and reasons given therefor. It will be found that wheresoever a preference in payment was upheld it was due to the particular phraseology of the trust instrument authorizing it according to the views of the particular court. The annotation also contains a long list of cases denying such preference in the absence of some provision in the trust instrument which, as we have said, are the sections of our Statutes supra, compelling it.

Learned counsel for appellants frankly admits that but for his interpretation of the inserted language from section 3102 of our Statutes each bond in this case would

be of equal dignity, and that the equal pro rata rule would prevail; but we are unable to agree with his interpretation of the excerpt from that section. The language, standing alone, is too vague and uncertain to be given the effect contended for, and especially is that true when other parts of the section, and various portions of preceding sections relating to the subject, clearly and most emphatically indicate that equality of payments was intended.

Wherefore, for the reasons stated the judgment is affirmed.

The whole court sitting.