No. 14,321.

Eisiminger *v.* Elliott, City Treasurer of Rocky Ford, et al.
(84 P. [2d] 823)

Decided November 21, 1938.

Messrs. SIMON & DREXLER, for plaintiff in error.

Mr. PERRY E. WILLIAMS, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE City of Rocky Ford, a municipality of the second class organized under the general laws of Colorado, created a local improvement district entitled Main Street Paving District and caused the streets therein to be improved. The property affected was duly assessed and bonds of the aggregate amount of $192,000 were issued under the provisions of chapter 151 of the Session Laws of 1899, C. L. '21 §§9464-9513. In 1923 the foregoing local improvement act was repealed and a new statute (chapter 180, S. L. 1923, '35 C. S. A., chapter 138, §§65 to 107 inclusive) was enacted. It is agreed here, as would be certain in any event, that the subject of the proceeding before us is governed by the 1899 act, notwith-

standing its repeal and the passage of the later law. As was contemplated by the statute the county treasurer of Otero county, in which the City of Rocky Ford is situate, has been collecting the installments of the principal of the assessments and interest on the unpaid balances from the property owners and remitting such funds to the city treasurer for disbursement. In making remittances to the city treasurer the county treasurer has indicated what part of the fund has been collected on account of principal and what part on account of interest, whereupon the city treasurer on his books makes credit to two accounts: one showing the amount received from the county treasurer as installments on the principal of the assessments, and the other showing the amount of interest collected on the unpaid balances of such assessments. From such interest fund, when a sufficient amount was therein available, it has been the practice of the city treasurer to pay the interest on the bonds, but in the event the account was insufficient the interest coupons are returned unpaid to the bondholders, even though at the time there was in the other fund derived from payments of principal of the assessments, a sufficient amount to pay the interest, if so applied. Whenever there accumulated in the principal fund an amount sufficient to permit redemption of outstanding bonds the city treasurer has redeemed bonds in their regular numerical order. Since April 1, 1933, there has been an insufficient balance in the interest fund for the redemption of interest coupons and the interest on all bonds has been in default since that date. The bondholders whose bonds have been redeemed subsequent to that time have been permitted to retain uncancelled all interest coupons maturing thereafter and up to the redemption date. At the time this action was filed there was in the interest fund $3530.98 and in the principal fund $2962.49.

The plaintiff in error, to whom we shall hereinafter refer as petitioner, is the owner of five of the outstanding and unpaid bonds of the district. Prior to the

institution of this action he presented to the respondent city treasurer matured interest coupons from his bonds with a demand for payment, which was rejected. The proceeding before us, in the nature of an action in mandamus and for injunctive relief, was then instituted by him. The judgment of the lower court was for the respondents. It is the contention of the petitioner that all monies derived from the payment, either of interest or principal, of the paving assessments should be placed in one fund and that out of that fund interest on the bonds should first be paid and if any excess remains that excess should be applied to the redemption of outstanding bonds in their numerical order.

The respondents, on the other hand, assert that they may pay interest accrued and accruing on the bonds solely out of the fund composed of interest paid on the annual installments collected and that they only may redeem the outstanding bonds with proceeds of the principal of the annual installments paid by the property owners.

In their pleadings respondents further allege that they are the trustees for all of the bondholders and, as such, are charged with the duty of correctly applying the monies received by them for account of the improvement district; that neither of them has any obligation to pay the bonds or the interest thereon except with the monies received from the property owners of the district; that they have no right or desire to seek to prefer any one creditor over any other creditor of the district; and that since the controversy has arisen, it is essential that the matter be finally determined both for their future guidance in the administration of the fund and as a protection to them against any possible liability which might accrue by reason of their inadvertent failure to properly apply the funds of the district. They add that if the litigation should result unfavorably to them and the judgment should approve the procedure insisted upon by the petitioner, sufficient monies will be received hereafter by them from the property owners of the district to enable them

to comply with the judgment and pay all delinquent interest to the holders of maturing coupons and, in the future, to the extent of monies available, discharge the indebtedness in accordance with the procedure to be established by the judgment herein.

As both parties concede, there is in the statute no express provision requiring payment of interest from interest collections and principal from principal payments on the assessments and the determination of the issue must rest upon the construction given certain portions of the act, the ordinance, and the bonds themselves. The respondents premise their contention on the provisions of section 35, act of 1899 (§9500 C. L. 1921), wherein it is provided that: "All monies collected from said assessments for any improvement shall be applied to the payment of all bonds * * * issued," on the following words in the bond ordinance: "that said bonds * * * shall be payable out of the monies collected on account of the assessments," and on the provision contained in the bonds to the effect that "This bond is payable out of the proceeds of a special assessment to be levied upon real estate * * *." It is asserted that by virtue of the inference to be drawn from these provisions, all monies collected on account of *principal* of assessments must go to pay *principal* of bonds and that none of it may be applied to the payment of interest on bonds, which of necessity then must be discharged by *interest* solely. The fallacy of this thesis lies in the erroneous assumption that the obligation to pay interest is separate and distinct from the obligation to pay the principal of the bonds. The bond is the sealed promise of the municipality to pay both *principal and interest*. It reads in part as follows: "The City of Rocky Ford * * * promises to [pay] the bearer * * * $1000.00 * * * on the first day of April A. D. 1943, * * * with interest thereon from date until payment at the rate of six per centum per annum, payable semi-annually * * *."

Section 36, chapter 151 S. L. 1899, provides that the

"bonds * * * shall bear interest not exceeding six per cent. per annum, as may be ordered by the * * * city council * * *, the interest to be paid semi-annually, evidenced by coupons * * *." Under these circumstances the obligation of the city to pay interest is just as much a part of the bond obligation as is its promise to pay principal. As a matter of commercial practice and as a convenience to the bondholders, interest coupons are ordinarily attached to the principal bond as an evidence of the promise to pay interest, but such practice does not detract from the duty imposed by the bond, nor effect a severance of the primary obligation with respect to both. It follows, therefore, that the "payment of all bonds" as prescribed by the above quoted language of the statute and ordinance, must be construed as demanding a coincidental discharge of interest as well as principal and must be given the same effect as if the words "and interest" had been inserted immediately after the words "bond" or "bonds" therein. As a matter of fact section 30 of the 1923 act (§94, chapter 138, '35 C. S. A.) corresponding with section 35 of the 1899 act, supra, so expressly provides. Contrary to respondents' suggestion, we believe the addition of the words "and interest" in the later act was indicative of the original legislative intent rather than the promulgation of a different system for the payment of interest.

The provisions of section 37, chapter 151, S. L. 1899 (§9502 C. L. '21), requiring "whenever funds may be in his [the city treasurer's] hands to the credit of any improvement [district] exceeding six months' interest on the unpaid principal, he shall, * * * call * * * bonds * * * for payment" contemplates an interest reserve and necessarily implies that all monies of the district received either as principal assessments or interest thereon should be kept in one fund. This statutory language is meaningless as applied to the Rocky Ford plan where payments on principal and interest are made from

different funds each irrespective of the other, and without reference to the aggregate balance of both.

Under the plan for special improvement districts evolved by the 1899 act, the total principal cost of the improvement was assessed against the property in the district on the basis of the benefits accruing thereto. The statute creates a preference between bonds by providing for their payment in numerical order. As a matter of practical consideration said to be indicative of legislative intent, the respondents argue that under a plan of this character any application of monies derived from the payment of the assessment for principal to the payment of interest on the bonds, will leave a shortage in the principal for the reason that only a sum equal to the amount of the bonds was assessed to the property owners. It is stated that holders of the $192,000 of bonds issued have no recourse for their satisfaction, except an equal sum in liens against the property of the district, and that if a $1,000 lien is satisfied by payment there is an immediate loss of $1,000 in the underlying resource and that if any part of this amount is applied to the payment of interest there is certain to be a deficit to the extent of such payment in the amount which will ultimately be available to discharge the principal indebtedness. When, however, it is considered that all of the unpaid assessments bear interest at six per cent per annum, which, even though not collected when due, still is owing, and belongs to, the account, it is evident that the use of funds, whether they be derived from principal assessment payments or interest collections, for the payment of bond interest amounts only to a temporary unbalancing of the account, which in itself will not defeat the ultimate liquidation of the indebtedness. As was pointed out in the case of *State ex rel. Ackerman v. City of Carlsbad*, 39 N. M. 352, 47 P. (2d) 865, where the double fund system was condemned, but two things can cause a large deficit: one arising by allowing money to lie idle in the district fund while the interest on the bonds continues to accrue; and the other, the posi-

tive failure in the ultimate collection of assessments secured by liens on the property. In the light of these considerations nothing inherent in the plan requires the practice of the matching of funds adopted by the respondents in the administration of the trust, and all the implications of the statute, ordinance and bonds are against it.

We must conclude, therefore, that neither the ordinance nor the statute warrants or contemplates the exclusive application of principal lien collections to the discharge of bond principal, and interest receipts to the payment of bond interest.

Neither do we believe where, as here, there have been defaults in the payment of the matured interest, the words of section 37 of the 1899 act, supra (§9502 C. L. '21), providing: "Whenever considered prudent by the city treasurer, he may * * * by advertisement * * * call * * * bonds * * * for payment * * *," have any application. This discretion, relating to the redemption of bonds, thus reposed in the city treasurer, cannot be so extended as to derogate the mandate of the statute and ordinance requiring the payment of interest, semi-annually, on the bonds outstanding, and its exercise must be limited to a period when no interest, *matured and due,* on the outstanding bonds is in default. If at a time when no such default exists, there is in the funds of the district sufficient money to discharge the principal of a bond or bonds, the city treasurer may, if he deems it prudent, call a bond or bonds without consideration of the interest accruing, but not yet due on the outstanding bonds of the issue, and to this extent anticipate revenue to meet the interest payment due on the next interest paying date. Where, however, defaults of matured interest have occurred, exercise of the discretion conferred by statute with respect to redemption of bonds, must be deferred until the defaulted payments have been liquidated.

The circumstance that the statute creates a numerical priority for payment of the bonds has no place in the controversy before us and there is nothing in our dispo-

sition which precludes the redemption of the bonds in that order. Considerations in this connection which might arise from a status of ultimate insolvency of this or any district are not involved in this proceeding and their determination must await the time of the happening of such a contingency.

We assume from the pleadings, although this does not definitely appear, that the funds of the district in the hands of the city treasurer are sufficient to discharge the matured interest, payment of which is in default, which would be a necessary condition to sustain the right of petitioner to mandamus, and upon this assumption the judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.