Theodore Lubezny, Appellee, v. Arley M. Ball, Township Treasurer, Appellant.

Gen. No. 9,894.

Heard in this court at the May term, 1943. Opinion filed August 19, 1943. Rehearing denied April 17, 1944.

ROY A. WHITESIDE, of Chicago, for appellant; WARD HEIDENRICH and WILLIAM H. MEYER, both of Chicago, of counsel.

RICHARD F. LOCKE, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

Elmwood Park Public School District No. 85, Cook county, Illinois, on July 7, 1932, adopted a resolution to issue anticipation warrants drawn against and in anticipation of taxes levied for educational purposes for the district for the year 1932 under the provisions of section 117 of the Free Schools Act which then read as follows:

"When there is no money in the treasury of any school district of this State, whether governed by either or both the general school laws, or any special charter, to defray the necessary expenses of the district, the directors, board of education, or board of school inspectors, as the case may be, may issue warrants, or may provide a fund to meet said expenses by its issuing and disposing of warrants, drawn against and in anticipation of any taxes levied for the

payment of the necessary expenses of the district, either for educational or for building purpose, as the case may be, to the extent of seventy-five per cent of the total amount of the tax so levied. Such warrants shall show upon their face that they are payable solely from such taxes when collected, and shall be received by any collector of taxes in payment of the taxes against which they are issued, and such taxes shall be set apart and held for their payment.

"Every warrant issued under the provisions of this section shall bear interest, payable only out of the taxes against which it is drawn, at a rate not exceeding six per centum per annum, from the date of its issuance until paid, or until notice shall be given by publication in a newspaper, or otherwise, that the money for its payment is available, and that it will be paid on presentation, unless a lower rate of interest shall be specified therein, in which case the interest shall be computed and paid at said lower rate." (Sec. 117, ch. 124, Ill. Rev. Stat. 1931.)

Warrants were issued and sold by the district from July 1932, to January 1936. The warrants were numbered in sequence as issued, beginning with number one, and 3279 were issued. The warrants did not provide for their payment in any numerical order. $36,235 was paid in numerical order for warrants numbered from one to fifty-eight inclusive, when they were presented for payment and taxes had been collected to pay each of them. Warrants were received in payment of taxes against which they were issued. There is now outstanding and unpaid warrants aggregating the principal amount of $63,194.62. The petitioner is the assignee and holder of warrant number 59 for $75. There is in the hands of the township treasurer $4,100 received by him from collection of taxes levied for educational purposes for the year 1932. The petitioner has made demand on the township treasurer for the payment of his warrant with 6

per cent interest, the rate of interest specified in the warrant, from its date, December 22, 1932. Payment of the warrant has been refused by the present township treasurer.

The petitioner on March 20, 1942, filed in the circuit court of Du Page county his petition for the writ of mandamus against the township treasurer (and *ex officio* treasurer of the school district) commanding him, out of the fund then in his hands received from the collection of taxes levied for educational purpose for 1932, to pay petitioner's warrant with interest thereon. The township treasurer filed an answer to the petition alleging (and undenied by the petitioner) that there are outstanding warrants to the aggregate principal amount of $25,000 which were issued within 75 per cent of said tax levy. The validity of petitioner's warrant is not questioned, it having been issued before warrants were issued in excess of the 75 per cent limitation. It is stated in the pleadings that the total face amount of warrants issued aggregated approximately $121,000. The tax levy for educational purposes was $85,131.86. It appears from the pleadings that the $4,100 which the township treasurer has on hand together with the proceeds of the collection of all of said taxes outstanding, if and when made, will be insufficient to pay the lawful warrants to the aggregate amount ($25,000) of unpaid warrants with interest.

The petition is drawn on the theory that the petitioner is entitled to the payment, *in toto*, of his warrant under the proper construction of the sections of the statute quoted. The answer of the respondent is framed on the theory that the taxes collected constitute a trust fund for the payment pro rata of all the valid, or lawful, anticipation warrants issued. The cause was heard by the trial judge upon the petition, the answer thereto and the arguments of counsel. The court ordered the peremptory writ of mandamus is-

sued as prayed in the petition. The respondent appealed to the Supreme Court which transferred the case.to this court, the Supreme Court having decided that the case does not relate to revenue.

As before stated all warrants bearing a number less than 59 were paid in full by the district in numerical order beginning with lowest numbered warrant, when presented to the township treasurer then in office. It would thus appear that if the warrants are legally payable in this manner that the petitioner was entitled to the writ as prayed for in his petition.

The petition contains one paragraph which is the foundation of two reasons urged by the petitioner that the warrants should be paid in numerical order by the treasurer as a statutory duty. It is alleged that it was the long established practice, usage and custom respecting the payment of school anticipation warrants, prior to the year 1935, to pay such warrants in numerical order; that the General Assembly of the State of Illinois, in 1935, enacted an amendment to chapter 122, section 132, of the Revised Statutes providing that warrants issued under the provisions of said section shall show upon their face that they are payable in the numerical order of their issuance; and that, by so doing, said General Assembly made a part of the statutory law of this State the long established principles, practices, usages and customs theretofore existing respecting payment of school tax anticipation warrants. This allegation of the petition is admitted by the respondents' answer. The implication of the allegation that it was the intention of the legislature, by amending the section, ''to approve and recognize'' the alleged custom, usage and practice to pay school anticipation warrants in numerical order, is a legal conclusion of the petitioner, and not binding on this court by any admission in the answer. It is not otherwise argued by the petitioner. (*Phillips v. Gannon,* 246 Ill. 98.)

The allegation relative to the long established custom of paying school anticipation warrants, however, forms the basis of the contention of the petitioner that section 117, was in 1932 entirely silent as to the manner in which the warrants were to be paid. That a judicial construction of the section is required and that this court should follow the doctrine that where a statutory provision is doubtful and there is need of interpretation, the practical exposition of it by departments of government called upon to act under it, acquiesced in by the people, especially for a considerable period of time, raises a strong presumption that it is correct and will generally be adopted by the courts. *Neiberger v. McCullough*, 253 Ill. 312. (See also *Nye v. Foreman*, 215 Ill. 285.)

It is stated by counsel for petitioner that the first tax anticipation warrant act applicable to school districts and boards of education was enacted in 1879 (Laws 1879, p. 78, sec. 2), and was re-enacted without substantial change in the School Act approved June 12, 1909. That between June 12, 1909, and July 10, 1935, the legislature on at least three different occasions considered and amended, section 117 of the School Act (Laws 1917, p. 758, sec. 1; Laws 1921, p. 832, sec. 1; Laws 1929, p. 701, sec. 1), but did not provide any change in the customary method of paying tax anticipation warrants. It is also true as stated by the petitioner that in 1934 groups of holders of unpaid anticipation warrants, which had been issued by the board of education of the City of Chicago, began to claim that their warrants should be paid pro rata because the balance of uncollected taxes available for their payment was insufficient to pay all the warrants in full. A statement of litigation based on claims above referred to appears in the case of *South East Nat. Bank v. Board of Education*, 298 Ill. App. 92. Those warrants were issued under section 132 of the School Act. It is also mentioned at this time that in

the case of *Board of Education of Chicago v. Norfolk & Western Ry. Co.,* 88 F. (2d) 462, the United States Circuit Court of Appeals held in 1937 that school anticipation warrants of said board issued before the amendatory acts hereinafter set forth were enacted, were payable pro rata out of the fund arising from taxes collected in cash for the payments of all warrants issued; thus eliminating warrants received in payment of such taxes as a factor in determining the pro rata distribution. (*Norfolk & Western Ry. Co. v. Board of Education,* 114 F. (2d) 859.)

It is further stated by the petitioner that when the matter of warrant holders claiming a pro rata distribution of unpaid warrants came to the attention of the legislature in 1933 it then amended section 132 of the School Act, applicable to Boards of Education in cities exceeding 500,000 inhabitants (par. 155, ch. 122, Cahill's St. 1933) and section 2 of the amendatory act reads as follows: "Whereas, warrants issued under this section are retired in the order of their issuance beginning with warrants having the lowest number and it is desired to make certain the validity of such procedure and thus increase the salability of such warrants so as to get money to pay current school expenditures, therefore, an emergency exists and this Act shall take effect upon its passage."

It is further stated by petitioner: "Again on May 4, 1934, the legislature considered section 132 of the School Act and by emergency amendment thereto, and provided that tax anticipation warrants issued under that section by the Board of Education of the City of Chicago should on their face state that they are 'payable in the numerical order of their issuance.' Section 2 of the amendatory act which also shows the intention of the legislature, reads as follows: 'Whereas, in one of the cities affected by Section 132 (this section) an effort is now being made through threatened litigation by holders of certain tax anticipation war-

rants issued against the taxes for school purposes to compel the city's officers to pay them off on a pro rata basis as collections are made from time to time, which would cause extra expense, confusion and unnecessary litigation, therefore, an emergency exists and this Act shall take effect upon its passage.' The following year section 117 of the School Act was amended in the same manner. (July 10, Laws 1935, Page 1403, Section 1.)''

These amendatory acts of the General Assembly, it is argued by the petitioner, amount to a declaration of the legislative intent and of the true meaning of section 117 and the other similar tax anticipation warrant statutes as they existed prior to such amendments. Our Supreme or Appellate Courts have not passed upon the claim of a holder of a tax anticipation warrant that his warrant should be paid in numerical order and in full (when there were other unpaid warrants) when there was sufficient money in the fund created by collection of taxes against which the warrant was issued to pay the warrant.

It is our opinion that it cannot be correctly stated that it was the long established and general custom in the State of Illinois to pay school anticipation warrants in numerical order whenever the taxes collected to pay the warrants were not sufficient to pay all valid warrants in full. It would appear from the fact that the legislature in 1909 re-enacted section 117, the section now in question, and amended the section three times before 1935 without providing that anticipation warrants under the section should be paid in numerical number, beginning with the lowest numbered warrant, although before 1935 the legislature had provided that anticipation warrants, issued by free schools and other taxing bodies, not including warrants issued under section 117, should be paid in numerical order (see also Warrant Act, ch. 146½, Smith-Hurd's Ann. Stats.), that before 1935 taxes

collected to pay warrants issued under section 117 were sufficient to pay all legal warrants in full.

It was after normal conditions became disturbed that the question of the method of paying the warrants issued under section 117 became a matter of importance and controversy. After the demands and claims of owners of such anticipation warrants came in conflict, because the tax fund for their payment was insufficient, the legislature enacted the requirement that all warrants under the section should be numbered in order of issuance and paid in numerical order beginning with the warrant bearing the lowest number. The amendments to the section, or others which were of like tenor, subsequent to the provisions of the section under which petitioner's warrant was issued and his assignor's rights vested, do not control nor determine the legal status of the warrant. Retroactive legislation changing rights is not favored, and a court will never give to a law such an operation unless compelled to do so by language so clear and explicit as to admit of no other interpretation. (*People v. Foreman,* 296 Ill. 487, at p. 493.) The adoption of a new law can have no retrospective operation so far as vested rights are concerned. (*People v. Sears,* 344 Ill. 189; *People v. Lindheimer,* 371 Ill. 367.) In the case of *Eddy v. Morgan,* 216 Ill. 437, it was held that the amendment of 1899 to the Police Pension Act of 1887 was not retroactive, so as to entitle the widow of a pensioner who died before the passage of the amendment, to a pension under its provisions. In the opinion in that case it is stated: ''We do not regard as important the allegation of the petition that efforts were made to have an act passed before and at the time of the passage of this act (the amendment of 1899) should have the retrospective effect contended for, and that in the opinion of certain legislators such was the effect of the act. While journals and proceedings of the legislature are sometimes looked to in an

endeavor to ascertain a proper construction of the statute, so that the court may have before it what is authentic that surrounded the enactment of the law, we are aware of no authority, and none has been pointed out, where the action of the lobby or the opinions of the legislators as individuals has been taken into account. In fact, we understand the rule to be otherwise and that such matters are inadmissible. (6 Am. & Eng. Ency. of Law, — ad ed. — 638.)'' It is also to be noted that the amendment of 1935 of section 117 of the Free Schools Act provides that, ''Such warrants shall show upon their face that they are payable in the numerical order *of their issuance* solely from such taxes when collected.'' Also, that the amendments of 1933 and 1935 to section 132 of the School Act both provided that each amendment should take effect upon its passage. (*Beckford v. Cheshire,* 128 Misc. 10, 217 N. Y. S. 215.) The two contentions of the petitioner, immediately above considered, cannot be sustained.

It is also contended by the petitioner that as the warrants are assignments of the taxes when collected, that is, equitable assignments, and the equities of the warrant purchasers being equal, their right to payment of their warrants should be tested under the maxim that, ''Where equities are equal, the first in time should prevail''; thus giving priority of payments of the warrants in order of their purchase. That a tax anticipation warrant is an assignment of tax money, the petitioner cites several cases including *Leviton v. Board of Education,* 374 Ill. 594.

Where there are successive assignments of a chose in action and the equities of the assignees are equal, there is a conflict of authority on the question if the first assignee, the one first in time, shall prevail under a rule, as between equities, the first in time is best in right, or, if the assignee who first gives notice of his assignment to the debtor shall prevail. The divergent

views of the courts, are fully discussed in the cases of *Salem Trust Co. v. Manufactures' Finance Co.*, 264 U. S. 182, 68 L. Ed. 628 and *State ex rel. Crane Co. v. Stokke*, 65 S. D. 207, 272 N. W. 811.

The school district had the right to issue successive warrants within the 75 per cent limitation of the statute, of which right the buyer of petitioner's warrant was informed when he bought his warrant; notice or demand of the petitioner upon the district for the payment of his warrants, or otherwise, could not add to his rights or prejudice the rights of other warrant holders. The basis of the doctrine that notice by an assignee of his assignment to the debtor, thus preventing fraudulent successive assignments, is wholly lacking. (*State v. Stokke, supra.*) The obligation of the district to pay the warrants was fixed at the time of the sale of the warrants, which could not be changed by any act of a warrant holder.

The warrants were successive assignments of the anticipated taxes, which when collected, were to "be set apart and held for their payment"—section 117, *supra*. It cannot be said that the entire 75 per cent of the levy was assigned to pay the warrant of the petitioner and that nothing remained of the levy to pay the other warrants. The warrants read, in part, "which taxes are especially assigned and pledged to the payment of this warrant." So much of 75 per cent of the levy, when collected, was security for all the warrants sold as they were all issued under the same transaction of creating a "fund" for their payment (section 117, *supra; Baldwin v. Bradley*, 69 Ill. 32). We are of the opinion that the rule, first in time is best in right, is founded on the fact that after the first assignment of an entire chose in action, nothing remains to be assigned by the creditor. (*State v. Stokke, supra.*) The maxim stated by the petitioner is not applicable to the facts in this case.

Where obligations or securities are issued by a taxing body which are payable solely out of taxes col-

lected to pay them, thus creating a fund as the only source from which the obligations are payable, and the obligations are not subject to payment by an unlimited power to tax by the taxing body, and there is no statutory or other express regulation as to the priority of their payment, the general rule is, that such fund is a trust fund and there is no priority among the security holders and they share pro rata from the fund if it is insufficient to pay all the obligations in full. (*Thomas v. Patterson,* 61 Colo. 547, 159 Pac. 34; *Norris v. Montezuma Valley Irr. Dist.,* 248 Fed. 369, writ of cert. denied in 248 U. S. 569, 63 L. Ed. 425; *People v. Anderson,* 380 Ill. 158; see also annotations in 90 A. L. R. beg. p. 717 to the case of *State ex rel. Buckwalter v. City of Lakeland,* 112 Fla. 200, 150 So. 508.) It is our opinion that such method of payment under the above circumstances, is fair to the security holders and yet will serve the best interests of the taxing body. If warrants were issued without any regulation as to the manner of their payment and they would be paid in full according to the lowest numbered warrant, and it would so happen that the holders of the higher numbered warrants received nothing, the salability of warrants would be impaired. (*Vanderpol v. Borough of Mt. Ephraim,* 111 N. J. L. 423, 168 Atl. 575, 89 A. L. R. 862.)

As before indicated the United States Circuit Court of Appeals, in the case of *Board of Education v. Norfolk & Western Ry. Co.,* 88 F. (2d) 462, passed upon the question now under consideration. It is stated in the opinion of that case: "The taxes received by the Board constituted a trust fund for the payment of all warrants." "The Board held the funds as trustee." In the case of *Jewell v. City of Superior,* 135 Fed. 19, cited with several other cases. In *Norfolk & Western Ry. Co. v. Board of Education,* 114 F. (2d) 859, *supra,* the court states: "The fifth assignment questions the action of the trial court in limiting the amount of his recovery to his pro rata share of the fund to which

the holders of all bonds were entitled. This fund, derivable from the assessments, was a trust fund, pledged to the payment of all the bonds. The right of the appellant therein was only to such portion of the fund realized as the sum of his bonds bore to the entire amount of the issue of the bonds. It is true that equity favors the vigilant, not the slothful; but we think it would be a manifest perversion of equity to require a trustee to commit a breach of trust owing to other *cestuis que trustent*, by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bond in full. We know of no principle of equity which would warrant such a decree.'' The same principle is laid down as the general rule by courts of other States. In our opinion it is a fair and equitable method of payment.

The order of the trial court issuing the writ is reversed and the cause remanded to the circuit court of Du Page county with direction to enter an order denying the prayer of the petition.

*Reversed and remanded.*