No. 15,534.

RISING, TREASURER ET AL. *v.* HOFFMAN ET AL.

(179 P. [2d] 430)

Decided February 24, 1947.   Rehearing denied April 14, 1947.

Mr. GLENN S. THOMPSON, Mr. RALPH L. CARR, for plaintiffs in error.

Messrs. CHUTKOW & ATLER, Mr. JOSEPH BERENBAUM, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

GRACE HOFFMAN and others, as plaintiffs, brought an action in the district court against the town of Yuma, Colorado, and its treasurer, as defendants, for an· accounting and other relief. Judgment was entered in favor of plaintiffs and against defendants, to review which defendants have sued out a writ of error.

There is no challenge as to the sufficiency of the pleadings and the parties orally stipulated as to the facts in the case. It is believed that the questions for our determination can best be presented by a resume of those stipulated facts material to the controversy.

In 1921, and also at the time of the trial, defendant Rising was treasurer of the town of Yuma, a municipal corporation in the state of Colorado. Prior to January 1, 1921, Yuma Sanitary Sewer District No. 1 was organized in accordance with the provisions of sections 9464 to 9513, inclusive, C.L. 1921, being chapter 151, Session Laws of Colorado 1899. January 1, 1921, the town of Yuma issued local improvement district bonds of the

Yuma Sanitary Sewer District No. 1 in the principal amount of $85,000.00, payable on or before January 1, 1938, each bond with interest coupons attached evidencing semiannual interest at the rate of six per cent from date until payment. The town of Yuma several years prior to January 1, 1938, became the owner of bonds numbered 81 to 85, inclusive, each in the principal sum of $500.00. Plaintiffs are the owners of bonds bearing numbers numerically greater than those purchased by the town. Prior to January 1, 1938, the town had redeemed $60,000.00 par value of the outstanding bonds, and on January 1, 1938, had paid all interest then due on the outstanding and matured bonds, leaving $20,000.00 principal of the outstanding bonds due and unpaid and for which it had insufficient funds with which to make payment. Due to economic conditions prevailing in the community, "the assessments were noncollectable," and the "balance of the bonds on hand will not and can not be paid." In 1939, through funds received from delinquencies, bonds 81, 82 and 83 were paid in the aggregate sum of $1,500.00. Bond No. 84, for $500.00, was paid in 1941, and bond No. 85 was paid in 1943. In the findings of the court—and no objection thereto was made—appears the following: "In March, 1939, some fifteen (15) months after the maturity of all of the said bonds, the Town of Yuma paid bonds numbered 81 and 82, held by the said Town, in the sum of $1,000.00; in 1940 the Town of Yuma redeemed another bond owned by itself, numbered 83, in the sum of $500.00; in 1941 the Town redeemed another bond owned by itself, numbered 84, in the sum of $500.00; in 1943 the Town redeemed another bond owned by itself, numbered 85, in the sum of $500.00, making a sum total of $2,500.00 paid to the Town of Yuma upon bonds numbered 81, 82, 83, 84 and 85, and paid to the said Town on the said bonds from fifteen (15) months to four (4) years after all of the said bonds outstanding were due."

There was a further stipulation that no interest what-

ever was paid on any outstanding bonds after January 1, 1938, and that "the Sanitary Sewer District Number 1 fund *is insolvent.*"

The total amounts of special assessments collected by the town subsequent to January, 1938, are as follows: 1938, $693.29; 1939, $706.85; 1940, $96.39; 1941, $540.85; 1942, $0.00; 1943, $378.52.

At the time of the trial, April 11, 1944, defendant treasurer had in his possession as a credit to the sanitary sewer district fund $183.25 and a lesser amount was in the hands of the county treasurer which had not been remitted to the town treasurer.

It also was stipulated that a demand had been made by plaintiff bondholders upon the city to repay the $2,500.00 which it had paid itself in redeeming bonds 81 to 85, inclusive, and that this sum be returned to the sanitary sewer district fund to be apportioned pro-ratably to all the bonds which remained unpaid and matured on January 1, 1938. It was further stipulated that under the agreed statement of facts the propositions of law submitted to the court were two: "First, whether or not under the statute as passed in 1899 there is a numerical priority in the payment of bonds after maturity; and second, if these bonds can be paid under the statute without first paying the interest, or having on hand at least a six months fund of interest with which to pay accruing interest as such under the statute."

At the conclusion of the hearing, the trial court made elaborate findings, among which were: (1) The Sanitary Sewer District No. 1 of the Town of Yuma was insolvent on and after January 1, 1938; (2) the town, as statutory trustee, violated its duty as such in the payment of its bonds 81 to 85, inclusive. The following judgment was entered:

"That the plaintiffs have and recover of and from the defendants twenty-five hundred dollars ($2500.00), together with interest from December 27th, 1943, the date of demand made by the plaintiffs upon the defendants

for the prorating of the said $2500.00 between the bond-holders of bonds outstanding and unpaid, which would include the bonds owned by the defendant Town:

"That upon the payment of the said amount of $2500.00, with interest as above specified, the Town of Yuma and I. L. Rising, as treasurer thereof, or his successor in office, shall distribute the said money to the said bondholders prorate according to the amount of bonds held by each bondholder:

"That distribution of the said funds on hand be made upon presentation of the bonds for proper endorsement and credit; and that interest on the said $2500.00 now held by the Town shall stop upon the payment of the said money to the town treasurer for the purposes above specified."

Plaintiffs in error have here enumerated five specification of points upon which they rely for a reversal. In these specifications they challenge the court's finding of insolvency of the sanitary sewer district on January 1, 1938. They also contend that the court was in error in entering judgment requiring the repayment of the principal amount of bonds 81 to 85, inclusive, with interest thereon from December 27, 1943, and the apportionment of this sum.

Defendants in error present two cross specification of points for our consideration in which they contend that interest at six per cent per annum should be allowed upon the principal of bonds 81 to 85, inclusive, from the date of their payment, and also that the sum of $715.29 should have been added to the judgment because funds in that amount belonging to the sanitary sewer district were lost in a bank failure.

At the time of trial, April 11, 1944, it was stipulated as shown above. The court found, without any additional evidence, so far as the record discloses, "That while the said Sanitary Sewer District Number One of the said Town of Yuma was insolvent, there was, however, some twenty-five hundred dollars ($2500.00) in cash collected

from the said delinquent taxpayers in said Sewer District; * * * and paid to the said Town on the said bonds [81-85] from fifteen (15) months to four (4) years after all of the said bonds outstanding were due."

■ As to insolvency. The argument of defendants presented here would have us limit the stipulation as to the district's insolvency as of April 11, 1944, the date of trial. The payment of the bonds, about which complaint is made, occurred in the years intervening between 1938 and 1943. It is evident from the record, as well as the findings, that the court considered and construed the word "is" as found in the stipulation of facts as if it were "was", and with this construction, and from other stipulated facts, found that the district was insolvent at all times after January 1, 1938. It is clear that plaintiffs took exception to the payments of moneys to the town while the district was insolvent, and to construe the verb "is" as applying to a condition existing on April 11, 1944, would result in making the stipulation wholly ineffectual for any purpose. The financial condition of the district at the time the bonds owned by defendant town were paid was material; its financial condition at the time of the trial may or may not have been so, and certainly to limit the stipulation to its financial condition as of the date of the trial does not appear from the record to have been the intention of either party. It is evident that the district did not have funds sufficient in amount to promptly discharge its obligations on January 1, 1938, and the record discloses that in the succeeding years no considerable amount of the assessments was collected. We have said, "By insolvency is meant an inability to fulfill one's obligations according to his undertaking, and general inability to answer in court for all of one's liabilities existing and capable of being enforced; not an absolute inability to pay at some future time * * * but as not being in condition to pay one's debts in the ordinary course, * * *." *Walton v. First National Bank,* 13 Colo. 265, 22 Pac. 440.

The financial condition of the district was such that even without the stipulation that "it *is* insolvent," the trial court was fully justified in finding and determining that insolvency existed January 1, 1938.

*As to payments.* It seems to be conceded that the bonds here in question were issued in full conformity with the provisions of an act of the general assembly approved April 8, 1899. This act, as we have said, is chapter 151, Session Laws of Colorado 1899, and sections 9464 to 9513, inclusive, C.L. 1921. Generally, it may be said that under the provisions of this act, cities, as well as towns, with a population of less than 100,000 were authorized to construct district sanitary sewers therein, assess and collect the costs of such improvements, and issue bonds to cover the same. There is no question here presented which in any wise challenges the validity and legality of the bonds. The trial court found that, "The whole controversy between the plaintiffs and the defendants is the interpretation to be placed on section 37, page 409, 1899 Session Laws."

The only question we shall determine is: Shall the outstanding bonds unpaid at maturity be paid in numerical order, or shall the funds then in the treasury of the district be prorated among the outstanding and unpaid bonds? The answer to this question necessitates an interpretation and construction of the provisions of said section 37 (section 9502, C.L. 1921). It is conceded by counsel, and the trial court stated, that this precise question has never been determined by our court. Section 37 reads: "Whenever considered prudent by the city or town treasurer, he may, and whenever funds may be in his hands to the credit of any improvement exceeding six months' interest on the unpaid principal, he shall, by advertisement for five days in some such newspaper *call in a suitable number of bonds* or warrants of the same district for payment; and at the expiration of thirty days from the first publication, interest on the bonds *so called* shall cease; the *notice*

shall specify the bonds or warrants *so called by number,* and *all such bonds* or warrants shall be paid in their numerical order. * * * " (Italics ours)

The bonds here in question provided for their payment in lawful money "on the first day of January, A.D. 1938, *subject* to call and payment, however, at any time prior thereto, as provided in the act of the General Assembly of the State of Colorado [c. 151, S.L. Colo. 1899] hereinafter mentioned, * * *." The evident purpose of this provision was · to accelerate the payment of the bonds in the event special assessments were collected under the provisions of section 29, S.L. 1899, or by the voluntary act of the property owner upon whose property the lien existed. Under the conditions to which reference is made, assessments thus collected by the town treasurer would no longer bear interest, and, inasmuch as the bonds bore interest at six per cent per annum, unless there was some method of accelerating the payment of the bonds, it would necessarily result in a deficit when the bonds matured; consequently, and in order to avoid such a result, section 37 was enacted. Under its provisions, whenever the town treasurer had in his possession funds to the credit of the improvement in excess of the amount necessary to pay six months' interest on the unpaid principal of the bond issue, it became his duty to apply such excess in the redemption of outstanding bonds, and these in their numerical order. The town treasurer was, under the circumstances, authorized and directed to issue a call and pay these bonds, prior to their maturity, in their numerical order. On January 1, 1938, the maturity date of all of the bonds then unpaid, no call was necessary. If any duty was imposed after the maturity of the bond issue, it devolved upon the owners to present their bonds for payment, and this would have been useless, for there were no funds available with which to pay them.

The record discloses that after January 1, 1938, to and including 1943, the total assessments collected were

$2,415.90, and at the time of the trial, April 11, 1944, the treasurer had in his possession $185.35, making a total amount received by him in the years intervening between January 1, 1938, and the date of the trial, of $2,601.25. At the date of trial improvement bonds of the face value of $17,500.00 had matured and were outstanding and unpaid. As appears from the stipulation, these never would be paid from the collection of special assessments. Under the provisions of the statute, the fund from which bonds are to be paid cannot be replenished, for the assessments against the property in the local improvement district are limited to the benefits presumably resulting therefrom.

We have held that under the local improvement act, "the town was a trustee of the special assessment funds, acting for the bondholders, who are the cestuis que trustent," and that, "municipalities are not exempted from liability for their treasurer's conduct on the theory that he was acting in a governmental capacity or because his duties were purely statutory." *Haxtun v. Wangnild,* 109 Colo. 518, 127 P. (2d) 328.

In *Eisiminger v. Elliott,* 103 Colo. 216, 84 P. (2d) 823, we held that said section 37 created a preference between bonds by providing for their payment in numerical order; however the bonds there involved were, according to the record, issued on April 1, 1921, and their final maturity date was April 1, 1943. Our decision was announced November 21, 1938, and, of course, was limited to the rights accruing to the bondholders where bonds were called for payment under the provisions of said section 37 prior to the final maturity date. In that opinion we took occasion to note that, "The circumstance that the statute creates a numerical priority for payment of the bonds has no place in the controversy before us and there is nothing in our disposition which precludes the redemption of the bonds in that order. *Considerations in this connection which might arise from a status of ultimate insolvency of this or any district are not*

*involved in this proceeding and their determination must await the time of the happening of such a contingency."* (Italics presently indicated) ,

In *City of Golden v. Schaul,* 105 Colo. 158, 95 P. (2d) 806, an examination of the record discloses that the bonds were issued June 1, 1923, and matured June 1, 1945. They were issued under the provisions of chapters 180 and 181, Session Laws of Colorado 1923, rather than under the 1899 act. The provisions of said chapters 180 and 181, respecting the calling of bonds prior to maturity, are very similar to those of section 37 of the 1899 act. In the Golden-Schaul case the question as to the payment of bonds in their numerical order after maturity could not have arisen because we announced that decision October 23, 1939. However, we note from the opinion the following: "As indicative of the controversies which may arise, the city contends that all the outstanding bonds should share ratably in the proceeds received from the assessments, as a result of which they say it was error for the trial court to order, as the first paragraph above provides, that the bonds should be retired numerically. In making this contention, the city assumes that the district is insolvent or at least that insufficient funds will be realized from assessments to pay all of the bonds with the interest thereon in full, and the cases they cite—[citing cases]—are conditioned upon the assumed premise or a different statutory situation. While the defaults in the payments of assessments, bonds and interest, which already have occurred may suggest an insufficiency of funds to discharge the total bond obligations and even may forecast an ultimate insolvency, this contention was not an issue herein nor established by the record, and hence was collaterial to this foreclosure proceeding." The court then quoted from *Eisiminger v. Elliott, supra,* as hereinbefore set out.

The Haxtun-Wangnild litigation was before us on two occasions, the first case being *Wangnild v. Haxtun,* 106 Colo. 180, and the second *Haxtun v. Wangnild,* 109 Colo.

518. There the bonds sued upon were issued under the 1899 act, being dated January 1, 1921, and they became due and payable on or before the 1st day of January, 1938. The action was begun on the 16th day of May, 1939, which was subsequent to the maturity date of the bond issue, but in this action, prior to maturity date of the bonds, beginning in the year 1924 and ending as late as 1936, the town redeemed bonds out of their numerical order and for its failure to pay Wangnild's bonds, which were numerically lower than the bonds redeemed in the interval mentioned, he had judgment against the town for the sum found to be due. These decisions are not helpful in the determination of any question here presented.

█ We have not found, nor has counsel called to our attention, decisions of any court involving a statute similar to ours which is helpful. In our own opinions we have definitely determined that under our local improvements act the town treasurer is a trustee; the bondholders are the cestuis que trustent; for any failure of the town treasurer to comply with his statutory duties as such trustee the town is liable; and that no statute of limitation is effective until the trustee has repudiated his trust. We then are led to inquire what the duty of such a trustee is when the funds in his hands are not sufficient to liquidate all claims of equal dignity against the bond funds. "Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment." 1 Pomeroy's Equity Jurisprudence (4th ed.), p. 764, §407.

In Dillon on Municipal Corporations (5th ed.), p. 1392,

§893, the author says that in the collection of assessments for the retirement of local improvement bonds the municipality acts as a statutory trustee, and then: "None of the bondholders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of all of the bonds, and the right of the holder of a part of the bonds is only to such portion of the fund realized as the sum of his bonds bear to the entire amount of the issue of bonds."

Likewise in McQuillin, Municipal Corporations (2d ed.), vol. 6, p. 275, §2504, is the statement: "If there are not sufficient funds to pay the bonds, all the holders should share pro rata."

Our attention has been called to various decisions in other jurisdictions, and it is urged that they announce principles of law which we should follow in the present case. An examination of the statutes in these jurisdictions discloses that in most instances they differ from ours so radically as to make the decisions inapplicable. Some of the statutes in other jurisdictions are so phrased as to leave no doubt whatever that the legislative body intended that bonds such as those here involved were to be paid in their numerical order, before and after maturity. Some of the decisions relate to conditions where insolvency is found to exist before maturity of the bonds, while others deal with situations where the funds with which to pay outstanding bonds cannot be replenished, rather than where, as here, the fund is limited to one assessment which cannot exceed the benefit that inures to the property in the improvement district. Under our statute, where the assessment is once fixed and determined, it becomes a lien against specific property, and no power exists to increase that assessment.

■ In the instant case the town treasurer is a trustee for all of the bondholders; the local improvement district is admittedly insolvent; the funds in the hands of the treasurer belonging to the district are insufficient to pay all of the matured and outstanding bonds. When

the statutory trustee pays bonds in their numerical order, as was the procedure here, the other bondholders owning unpaid bonds will receive nothing; whereas, if the town treasurer is the statutory trustee, as we hold he was, his duty as such is to all of the unpaid bondholders as well as those whose bonds are first in numerical order. In other words, if the town treasurer is a trustee for all the bondholders, he fails in the performance of his duty if from a common fund he permits some bondholder to completely exhaust the trust funds in his possession; whereas if all of the owners of matured bonds are permitted to share in the trust funds of the insolvent district pro rata, his duty as statutory trustee will be fully performed and complete justice rendered to all those to whom he owes the duty. In the instant case the town treasurer in the payment of bonds numbered 81 to 85, inclusive, in the amount of $2,500.00, gave to the holder thereof a preference to the detriment of other bondholders in the insolvent district. By the weight of authority and the best reasoned decisions of courts in jurisdictions having statutes somewhat similar and comparable to our own, when a local improvement district becomes insolvent and its bonds have matured and there are insufficient funds to the credit of the district to retire them, a proration among the owners of matured and unpaid bonds is required. *Rothschild v. Village of Calumet Park,* 350 Ill. 330, 183 N.E. 337; *Jewel v. City of Superior,* 135 Fed. 19; *Lucas v. First National Bank,* 171 Okla. 606, 43 P. (2d) 752; *Morris, Mather & Co. v. Port of Astoria,* 141 Ore. 251, 15 P. (2d) 385; *Kerr Glass Manufacturing Corporation v. City of San Buenaventura,* 7 Cal. (2d) 701, 62 P. (2d) 583; *Brown-Crummer Inv. Co. v. City of Purcell,* 128 F. (2d) 400; *Town of Columbus v. Barringer,* 85 F. (2d) 908.

◼ The determining factor in a large number of decisions might be said to be the existence of an inexhaustible taxing power. Where this power exists, while the fund for the payment of bonds may be insufficient at

the time to meet all outstanding bonds, nevertheless that fund may be replenished by additional levies. It is clear that in the present case the owners of bonds which have matured will never be paid in full, and under these conditions it has frequently been held that the fund should be distributed prorata. This is particularly true because the sole security for the payment of these bonds consists of special assessments, and the bonds are not in any sense general obligations; consequently the town may not impose a general tax for their payment. *Meyers v. City of Idaho Falls,* 52 Idaho 81, 11 P. (2d) 626; *Maccabees v. City of Ashland,* 270 Ky. 86, 109 S.W. (2d) 29; *Lubezny v. Ball,* 322 Ill. App. 78, 53 N.E. (2d) 988.

It is our opinion that under the provisions of section 37, supra, the town treasurer, in the payment of bonds prior to their maturity date, is limited, and under this section payment may be made, provided the town treasurer has funds on hand sufficient to pay six months' interest on the unpaid principal of the outstanding bonds, and in event he has such funds on hand, he must then pay bonds in their numerical order. This section is inapplicable after the maturity date of the bonds.

It is also our conclusion, and we so hold, that after the maturity date of the bond issue, all unpaid bonds are on a basis of equality, and, as to them, no priority or preference exists; that where the district is insolvent and thereby the funds on hand are insufficient to pay all of the outstanding matured bonds, then it becomes the duty of the town treasurer as a statutory trustee to prorate the funds among all of the owners of outstanding bonds.

The trial court here allowed judgment for interest on the sum of $2,500.00 from the date when plaintiffs demanded proration, and in so doing we think it was correct.

Plaintiffs contend that the judgment entered by the trial court should be augmented by approximately $750.00 which, it is said, belongs to the district, and

while on deposit in some bank was lost to the fund. Facts sufficient to justify an augmentation of the judgment in this amount are not presented.

There is no reversible error in the record, and the judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE JACKSON dissent.

MR. JUSTICE STONE does not participate.